

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMB/JPL:BWB
F.#2010R00057

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 17, 2011

By Hand Delivery

The Honorable Raymond J. Dearie
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  United States v. Adis Medunjanin
          Criminal Docket No. 10-19 (S-3)(RJD)

Dear Chief Judge Dearie:

      A conference in the above-referenced matter is scheduled for March 22, 2011, in relation to the defendant's request to subpoena Department of Justice Trial Attorney and former Assistant United States Attorney Jeffrey Knox ("AUSA Knox") to testify as a witness at the suppression hearing.  See Letter from Stephanie M. Carvlin, Esq. to Hon. Raymond J. Dearie, March 11, 2011 ("Def. Subpoena Motion"), at 5.  The government respectfully submits this letter as a motion to preclude any such testimony and quash any such subpoena, both because the requested testimony would be irrelevant to the outcome of the suppression motion and because the defendant has not made any plausible showing that the testimony would be material or favorable.

      As discussed further below, much of the testimony the defendant seeks to elicit falls squarely within the deliberative process privilege and the law enforcement privilege.  The government is currently evaluating whether and on what topics to invoke any legal privilege.  Pursuant to 28 C.F.R. § 16.24(c) and United States Attorney's Manual Section 1-6.400, however, the government files this motion in advance of a final decision whether to do so.

I.   Background

Over the weekend of March 5-6, 2011, the defendant formally requested that the government make AUSA Knox available to testify at the suppression hearing.  On Monday, March 7, 2011, the government requested, pursuant to 28 C.F.R. § 16.23(c), that the defendant first provide an affidavit or summary of the testimony sought to be elicited so that the government could determine whether to invoke any legal privilege.  See Government Letter to Robert Gottlieb, Esq., Mar. 7, 2011, attached as Exhibit A to Def. Subpoena Motion, at 3.  On Tuesday, March 8, 2011, the defendant proffered a list of topics about which he wished to question AUSA Knox.  See Letter from Stephanie M. Carvlin, Esq., Mar. 8, 2011, attached as Exhibit B to Def. Subpoena Motion, at 1-2.  On Thursday, March 8, 2011, pursuant to an invitation from the Court to "retool" his request, Tr. at 474, the defendant submitted a revised and expanded request.[1]  In his revised request, the defendant currently seeks, in relevant part:

> (1)   to elicit "[t]hat on September 25, 2009, Robert Gottlieb informed Mr. Knox that Mr. Gottlieb was representing [the defendant] with respect to the government investigation," and that "Mr. Knox acknowledged that Mr. Gottlieb was representing [the defendant] in this matter and agreed that members of law enforcement would not seek to question [the defendant] outside Mr. Gottlieb's presence";
>
> (2)   to ask about "any conversations between Agent Farbod Azad and [AUSA Knox] on January 7 or 8, 2010, in which they discussed the arrest of [the defendant] and whether [the defendant] could legally be questioned in spite of the fact that the government knew he was represented by counsel";
>
> (3)   to ask whether AUSA Knox had any such conversations "with other members of law enforcement," and, if so, to seek the content of such conversations;
>
> (4)   to ask whether AUSA Knox had any such conversations "with any other employees of the Justice Department," and, if so, to seek the content of such conversations;

---

[1]   Citations to "Tr." are to the transcript of the suppression hearing.

>    (5)   to ask when AUSA Knox "became aware through any means . . . that Robert Gottlieb had called him on January 7, 2010, and was attempting to contact him to discuss [the defendant's] arrest, to locate [the defendant] and to insure that he not be questioned";
>
>    (6)   to ask when AUSA Knox "became aware through any means . . . that Jordan Dressler . . . had called Mr. Knox and other members of law enforcement on January 7, 2010, to discuss [the defendant's] arrest, to locate [the defendant] and to insure that he not be questioned"; and
>
>    (7)   to ask whether AUSA Knox "or, to his knowledge, any other federal prosecutor or law-enforcement agents, attempted by any means to prevent Mr. Gottlieb from locating and speaking with [the defendant] on January 7 or January 8, 2010."

Letter from Stephanie M. Carvlin, Esq., Mar. 11, 2011, attached as Exhibit C to Def. Subpoena Motion, at 1-2.

II.  Applicable Law

"The Sixth Amendment, by its terms, gives the defendant in a criminal trial the right 'to have compulsory process for obtaining witnesses in his favor.'"  United States v. Scopo, 861 F.2d 339, 345 (2d Cir. 1988).  As the Second Circuit has held, however:

> This does not . . . guarantee him an unrestricted right to compel the presence of any and all witnesses he may choose.  Rather, the defendant who complains that his right to call witnesses has been violated "must at least make some plausible showing of how their testimony would have been both material and favorable to his defense."

Id. (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 & n.7 (1982)).

Thus, before a defendant can claim that he has the right to require a proposed witness to testify, he must demonstrate both some basis to believe that the proposed testimony will be favorable and some basis to believe that any favorable testimony will be material and not merely cumulative of other available testimony.  See, e.g., id. (affirming trial

court's refusal to issue subpoenas for proposed defense witnesses, and stating that "[i]n assessing the value of proposed witnesses' testimony, we must bear in mind that the trial judge has wide discretion to exclude proffered evidence that is collateral, rather than material, to the issues in the case"); United States v. Caming, 968 F.2d 232, 238 (2d Cir. 1992) (affirming trial court's decision to quash a defense subpoena because the proposed testimony would not have been relevant or material, and the defendant could not show a "reasonable likelihood that [the witness's] testimony could have affected the judgment of the trier of fact"); United States v. Scully, 982 F.2d 798, 805-06 (2d Cir. 1992) (no violation of right to compulsory process where trial court declined to subpoena District Attorney in support of suppression motion where defendant failed to establish that the testimony would be anything other than cumulative).

In addition, the deliberative process privilege protects "communications made between government personnel . . . which consist of advisory opinions and recommendations preliminary to the formulation of agency policy." Strong et al., McCormick on Evidence, 400 (4th ed. 1992) (citing Formaldehyde Institute v. Dept. of Health & Human Svcs., 889 F.2d 1118 (D.C. Cir. 1989)); see also In re Franklin Nat. Bank Sec. Lit., 478 F. Supp. 577, 580-81 (E.D.N.Y. 1979) ("The primary rationale for the intragovernmental opinion privilege is that effective and efficient governmental decision making requires a free flow of ideas among government officials and that inhibitions will result if officials know that their communications may be revealed to outsiders.") (Weinstein, J.). Similarly, the law-enforcement privilege affords the government a qualified privilege meant "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995). The law enforcement privilege further protects the "ability of a law enforcement agency to conduct future investigations" which "may be seriously impaired if certain information is revealed to the public." In re City of New York, 607 F.3d 923, 944 (2d Cir. 2010) (observing that the privilege is intended to protect, among other things, "information pertaining to law enforcement techniques and procedures").

III. Discussion

The Court should preclude the defendant's attempt to subpoena AUSA Knox because the testimony sought would be

irrelevant to the outcome of the suppression hearing, and because the defendant has failed to make any "plausible showing" that the testimony would be material and favorable.

The government notes preliminarily that with the exception of request (1), the defendant's requests, even after being "retooled," do not summarize testimony sought to be elicited, but rather resemble discovery demands for "any conversations" or "any means." It is of course conceivable that by specifying more precisely what information he expects to elicit and how that information would affect a governing legal standard, the defendant can make a more plausible showing of relevance, or at least better inform the government whether or not to invoke an applicable legal privilege.

A.  Requests (1) Through (4)

The defendant's requests can be divided into two groups. In requests (1) through (3), in support of his argument that the defendant did not validly waive his Miranda rights on January 7, 2010, the defendant seeks to elicit testimony establishing that the government was aware that the defendant was already represented, and to explore what advice AUSA Knox gave the agents about whether the defendant could legally be interviewed despite that representation. Relatedly, in request (4), the defendant seeks information regarding internal deliberations among DOJ attorneys about what advice to give the agents.

These requests should be denied in the first instance because they do not add anything to the relevant legal analysis. As indicated in the government's opposition to the motion to suppress, a defendant cannot invoke the Fifth Amendment right to counsel prior to being taken into custody, and he cannot invoke the Sixth Amendment right to counsel prior to being indicted or arraigned on a complaint. See, e.g., Montejo v. Louisiana, 129 S. Ct. 2079, 2089-91 (2009); Rothgery v. Gillespie County, Tex., 554 U.S. 191, 198 (2008). Nor can counsel independently invoke a defendant's Fifth Amendment rights on the defendant's behalf. Moran v. Burbine, 475 U.S. 412, 422 (1986). Moreover, even assuming the defendant could have invoked a right to counsel prior to his initial interview, he did not do so, as the recorded telephone call submitted by the defendant in support of his motion establishes. See Def. Ex. B-1 (transcript of telephone call 18265470). The validity of the defendant's Miranda waiver thus turns entirely on the circumstances of that waiver, facts about which AUSA Knox has no first-hand knowledge and about which the witnesses with first-hand knowledge have already testified.

Even if the Court disagrees with the government's legal analysis, however, AUSA Knox's testimony would still be irrelevant. Assuming for the sake of argument that the government could not legally seek a <u>Miranda</u> waiver from a defendant who had previously retained counsel in connection with an investigation and prior to charge or arrest (a proposition for which the defendant has yet to offer any legal support), then the <u>Miranda</u> waiver would be invalid even if AUSA Knox had advised the agents otherwise. Testimony from AUSA Knox would have no impact on the Court's decision in either scenario.

Requests (1) through (4) should also be denied because the defendant has not made a plausible showing that AUSA Knox would provide favorable, non-cumulative testimony on those topics. With specific reference to request (1), the government has repeatedly conceded and offered to stipulate that it was aware as of late September 2009 that the defendant had retained Mr. Gottlieb in connection with the investigation.[2] Any testimony to that effect by AUSA Knox would be plainly cumulative. <u>See, e.g.</u>, Def. Subpoena Motion at 4 n.3. Moreover, any testimony by AUSA Knox regarding a purported agreement not to question the defendant in the future would not only be legally irrelevant but ought, if accurate, to be available to the defense without subpoenaing AUSA Knox. Given that Mr. Gottlieb was the other party to the call, the defendant cannot plausibly claim to be reliant on AUSA Knox's testimony to establish that "fact." <u>See, e.g.</u>, <u>Valunezuela-Bernal</u>, 458 U.S. at 871 ("In addition, it should be remembered that the [defendant] was present throughout the commission of this crime. No one knows better than he what the deported witnesses actually said to him . . . .").[3]

Requests (2) and (3) would also be cumulative of evidence already elicited that AUSA Knox advised Special Agent Azad that he could interview the defendant as long as the

---

[2] Although the defendant seeks to elicit from AUSA Knox that counsel telephoned him on September 25, 2009, counsel's own affidavit on the subject states that he did not contact AUSA Knox until September 28, 2009. <u>See</u> Affidavit of Robert Gottlieb ("Gottlieb Aff."), Dec. 6, 2010, at ¶ 6.

[3] Counsel's account of this telephone conversation does not include any reference to a purported agreement by AUSA Knox that law enforcement would not seek to question the defendant without counsel. Rather, the affidavit states only that counsel "told . . . AUSA Knox that [he] was aware that federal law enforcement officials were conducting an investigation of [the defendant] and that [he] was representing [the defendant] in connection with that investigation." <u>See</u> Gottlieb Aff. ¶ 6.

defendant waived his <u>Miranda</u> rights. Tr. at 172-73.[4] Thus, to the extent the defendant believes that the existence of such advice is relevant to the decision of the motion, he has already made his record.[5]

Request (4) should also be denied because it is cumulative and irrelevant. As discussed above, to the extent the defendant seeks to establish the preliminary irrelevant fact that the agents acted on prosecutorial advice that they could legally question the defendant after a <u>Miranda</u> wavier, he has already done so. There can be no plausible claim that internal discussions among DOJ attorneys, either in the United States Attorney's Office or in Washington, D.C., could have any bearing on whether the defendant validly waived his rights. To the extent that such discussions resulted in the agents seeking a <u>Mirandized</u> interview, the defendant has established that fact; to the extent that such discussions could in theory have resulted in different advice but did not do so, such counterfactual theoretical exercises cannot logically have any effect on the result of the defendant's motion.

Finally, the government notes that the information sought in requests (2) through (4) is precisely the type of intragovernmental communication about prospective investigative steps that the deliberative process privilege and law enforcement privilege protect. <u>See, e.g.</u>, <u>In re Franklin Nat. Bank Sec. Lit.</u>, 478 F. Supp. at 580-81; <u>In re City of New York</u>, 607 F.3d at 944. Those privileges, and the cases that define them, permit federal prosecutors and agents to evaluate the viability and propriety of law enforcement tactics without concern that those evaluations will be later subject to compulsory disclosure by criminal defendants. The relevant facts for the purpose of the law governing the admissibility of custodial statements are the facts already elicited about what occurred during questioning, <u>see</u> <u>Burbine</u>, 475 U.S. at 422, not the legal views of and advice given by those who never had any direct contact with the

---

[4] The defendant also had the opportunity to question the other members of the interview team about this topic, but elected not to do so. Tr. at 311-30 (cross-examination of Detective Carney), 406-17 (direct examination of Detective Maysonet), 441-451 (direct examination of Detective Murphy).

[5] Although request (2) suggests on its face that the defendant seeks to elicit testimony about conversations concerning the defendant's arrest on topics <u>other</u> than whether the defendant could be legally questioned, in context we understand the request to be limited to discussions concerning whether the defendant could be legally questioned.

defendant.  At least absent any showing by the defendant why such information would be favorable and material to his motion, the Court should reject the defendant's attempt to subpoena AUSA Knox to make such privileged disclosures.

B.   Requests (5) Through (7)

In requests (5) through (7), in support of his argument that the government unlawfully interfered with his right to counsel, the defendant seeks to establish when and how AUSA Knox learned that Mr. Gottlieb and his associate Jordan Dressler were attempting to locate the defendant, and whether AUSA Knox or anyone else associated with the federal government attempted to prevent counsel from doing so.

As with the first group of requests, the information sought by these requests adds nothing to the legal analysis. Controlling Supreme Court precedent establishes that the validity of a Miranda waiver is determined by the objective circumstances at the time of the questioning, and not by outside events unknown to the defendant.  See Burbine, 475 U.S. at 422.  Thus, even assuming the government became aware of counsel's interest in locating the defendant at the moment counsel first attempted to locate him, that assumption would play no role in the Miranda waiver analysis.  Similarly, even assuming hypothetically that the government had affirmatively misled counsel in an effort to forestall his ability to locate the defendant - which, of course, it did not - that too would be irrelevant to the analysis.  See id. at 423 ("[E]ven deliberate deception of an attorney could not possibly affect a suspect's decision to waive his Miranda rights unless he were at least aware of the incident.").

In any event, here too the defendant has failed to make any plausible showing that AUSA Knox would provide favorable or material non-cumulative testimony.  With regard to request (5), the defendant has already had the opportunity to establish that counsel attempted to contact AUSA Knox on January 7 to discuss the defendant's arrest, to locate him, and to try to ensure that he would not be questioned, and the defendant has either failed or elected not to do so.  Rather, the defendant has established only that, after learning of the execution of the search warrant, Mr. Gottlieb contacted Agent Azad and AUSA Knox to discuss the warrant.  See Gottlieb Aff. at ¶¶ 11-12.[6]  Despite ample

---

[6]  The failure to discuss questioning was logical, considering that counsel had not yet learned that the defendant was in custody.  See Def. Ex. B-1 (transcript of telephone call 18267438) (counsel reporting results of his phone call to the government prior to learning of the defendant's car crash).

opportunity, the defendant has put forth no evidence of any further attempt by Mr. Gottlieb to contact AUSA Knox or anyone in the United States Attorney's Office for any purpose until the next day. There is thus no basis to ask AUSA Knox when he became aware of such attempts.

With regard to request (6), the defendant has similarly failed to make any showing that AUSA Knox has any relevant testimony to offer regarding Mr. Dressler's attempts to locate the defendant on January 7. Indeed, Mr. Dressler's own testimony establishes no attempt to contact AUSA Knox or anyone at the United States Attorney's Office on that day (and moreover offers no indication of what, if anything, Mr. Dressler actually communicated to anyone). Tr. at 426-39.

Finally, with regard to request (7), the defendant has failed to provide any specific proffer of what he seeks to elicit other than a conclusory suggestion that the government "attempted . . . to prevent" counsel from locating the defendant. To the extent that the defendant merely seeks to elicit that AUSA Knox failed to return counsel's telephone call regarding the search warrant until the morning of January 8, that testimony would be unremarkable, and in any event has already been established elsewhere. See, e.g., Gottlieb Aff. ¶ 24. The fact is, in any event, irrelevant in the absence of any citation to legal authority requiring the government to return counsel's telephone calls during an ongoing custodial interview. Cf. Def. Ex. B-1 (transcript of telephone call 18268567) ("[P]rosecutors, they don't always call back until they know what they're gonna do. They're not required to speak to me.").

To the extent that the defendant seeks instead to elicit that anyone in the federal government actively misled counsel during counsel's attempt to locate the defendant, he has not made any plausible showing that such misdirection took place. Nothing in the record, after three days of testimony by the agents who had direct contact with the defendant, and an opportunity to question or call hospital staff or police officers, supports any inference that anyone took any steps to hide the defendant or mislead counsel. Rather, the record establishes that, for reasons attributable to the defendant rather than to counsel, neither Mr. Gottlieb nor Mr. Dressler learned of the defendant's car crash or made any attempt to locate the defendant until long after he had already waived his Miranda rights, been discharged from the hospital, and been transported to the JTTF office. See, e.g., Def. Ex. B-1 (transcript of telephone call 18269006) (counsel first reporting knowledge of defendant's admission to the hospital at 9:28 p.m.); Tr. at 430 (Mr. Dressler first being assigned to find the

defendant at 9:55 p.m.); Gov. Ex. 16, at 8 (defendant discharged from the hospital prior to 8:33 p.m.).

It certainly appears from counsel's affidavit that he may have received conflicting information from hospital staff and officers at the local precinct not involved in the investigation. See Gottlieb Aff. at ¶¶ 15-22. But the conjecture that some malevolent design was responsible for that conflicting information does not constitute a "plausible showing" that calling the federal prosecutor to the stand would result in any responsive, much less favorable, testimony. Scopo, 861 F.2d at 345. The defendant should thus reframe his request to indicate what, if anything, he believes the federal government did to conceal his client, or the Court should deny the request to subpoena AUSA Knox.

    C.   The Defendant's Counterarguments

The defendant makes two legal arguments in support of his subpoena request. First, the defendant argues that AUSA Knox could testify about whether the government attempted to keep Mr. Gottlieb away from the defendant so that Mr. Gottlieb could not advise the defendant to invoke his Miranda rights. Def. Letter at 4.

This line of argument is foreclosed by Burbine. The defendant's attempts to distinguish Burbine, which the government previously addressed in its opposition to the suppression motion, are without merit. Burbine stands for the proposition that "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." Burbine, 475 U.S. at 422. The opinion does not create any exception to this general principle based on the length or quality of the prior relationship with counsel. Moreover, the opinion explicitly disposes of the defendant's proposed distinctions based on allegedly deliberate government misdirection of counsel, and speculation that the defendant would not have waived had he known of counsel's attempts to reach him. See id. at 422-23.

The defendant's second argument is that AUSA Knox's testimony could hypothetically establish that the government interfered with the defendant's right to counsel by separating him from Mr. Gottlieb, or by questioning him with the knowledge that it was unconstitutional to do so. The defendant argues that such testimony could support an argument that the government violated the defendant's Sixth Amendment right to counsel and Fifth Amendment right to due process under the Second Circuit's

decision in United States v. Stein, 541 F.3d 130 (2d Cir. 2008). As discussed in the government's opposition brief, however, the Stein opinion reaffirms that the Sixth Amendment right to counsel does not attach until indictment. The Stein Court found a Sixth Amendment violation based on pre-indictment conduct because the government's pre-indictment threats to prosecute the company paying for the defendants' attorneys had the effect of denying the defendants their counsel of choice after indictment. See Stein, 541 F.3d at 148 n.9 ("[b]ecause the Sixth Amendment attaches only upon indictment, the KPMG conduct attributable to the government is relevant only insofar as it contributed to KPMG's decision to withhold legal fees upon defendants' indictment") (emphasis in original). Here, the defendant has not alleged any abridgement of his post-indictment choice of counsel, and Stein's Sixth Amendment holding is therefore legally inapposite no matter what AUSA Knox's testimony would establish.

The defendant also alleges a violation of his Fifth Amendment due process rights based on the Circuit's decision in Stein. The Second Circuit, however, made no Fifth Amendment holding in Stein. See id. at 136 ("we do not reach the district court's Fifth Amendment ruling"). To the extent the defendant intends to rely on the district court's opinion in Stein, he fares no better. The district court in Stein found that prosecutors used KPMG to coerce KPMG employees in a manner that "shocked the conscience." United States v. Stein, 495 F. Supp. 2d 390, 413-15 (S.D.N.Y. 2007). The government conduct in Stein included acting through KPMG to coerce interviews with KPMG personnel by threatening to fire uncooperative employees and to strip indicted employees of a means of defending themselves that KPMG otherwise would have provided to them. See id.

There is no allegation of such coercion here. Rather, the defendant apparently bases his "shocks the conscience" argument on the premise that it was unconstitutional to seek a Miranda waiver for a defendant who had previously retained counsel. As noted, the government disagrees with this premise, and has presented case law in support of its position. In any event, if the premise were true, the due process analysis would be superfluous because the statements would have been taken in violation of the Fifth Amendment right to counsel in any case.

The defendant apparently also bases his due process argument on the premise that AUSA Knox might theoretically testify that the government "deliberately interfere[d]" with the "right to counsel" by keeping Mr. Gottlieb separated from the defendant. Again, this "due process" analysis would be superfluous because it depends on some preexisting violation of the right to counsel. If the defendant in fact validly waived

his right to counsel, the argument fails; if the defendant did not validly waive his right to counsel, the argument is unnecessary.  Of course, as noted above, the Supreme Court has already addressed in Burbine the validity of Miranda waivers taken in ignorance of defense counsel's attempts to reach a defendant, and the defendant cannot sidestep the Burbine holding by repackaging the same facts in a substantive due process package.  Cf. Graham v. Connor, 490 U.S. 386, 394 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").  In any event, as discussed above, the defendant has made no plausible showing that AUSA Knox would provide favorable testimony on that subject, and the defendant's proffer of the expected testimony is merely a conclusory recitation of what the defendant takes to be the applicable legal standard.  On that showing, the request to subpoena an AUSA should be denied.

IV.   Conclusion

For the foregoing reasons the government respectfully requests that the defendant's motion to subpoena AUSA Knox be denied in its entirety.

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                  UNITED STATES ATTORNEY

By:         /s/
               David Bitkower
               James P. Loonam
               Berit W. Berger
               Assistant U.S. Attorneys
               (718) 254-7000

cc:   Clerk of the Court (RJD) (by ECF)
     Robert Gottlieb, Esq.