UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA,                          :

    -against-                                               :

FERID IMAM,
    also known as "Yousef,",                       :       10-CR-19 (S-4)(RJD)
ADIS MEDUNJANIN,
    also known as "Muhammad,"                  :
ABID NASEER,
ADNAN EL SHUKRIJUMAH,                          :
    also known as "Hamad,"
TARIQ UR REHMAN and                              :
FNU LNU,
    also known as "Ahman" and                  :
    "Zahid,"
                                           :
                    Defendants.
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S MOTION
## FOR ANONYMOUS AND SEQUESTERED JURY

Robert C. Gottlieb, Esq.
Stephanie Carvlin, Esq.
Mitchell Dinnerstein, Esq.
Celia Gordon, Esq.
Justin Heinrich, Esq.
Counsel for Adis Medunjanin
111 Broadway, Suite 701
New York, NY   10006
212-566-7766

## **PRELIMINARY STATEMENT**

The government has moved for an anonymous and partially sequestered jury for the trial of this case. Specifically, the government asks that this Court order that the names, addresses and workplaces of members of the venire and petit juries be kept secret. Additionally, the government seeks to have the jurors kept together, away from other members of the public, during recesses and lunches and to have the jurors be transported to and from the courthouse during trial "in a manner to be arranged by the United States Marshals Service." (Government's Memorandum in Support of Motion for Anonymous Jury, hereinafter "Government's Memorandum", at 1.) This motion should be denied.

The United States Court of Appeals for the Second Circuit has recognized that the use of an anonymous and partially sequestered jury burdens a defendant's rights under the Fifth and Sixth Amendments to the United States Constitution to the presumption of innocence, to an impartial jury and to the ability to conduct meaningful *voir dire*. See United States v. Wong, 40 F.3d 1347, 1376 (2d Cir. 1994); United States v. Amuso, 21 F.2d 1251, 1264 (2d Cir. 1994). As a result, these drastic measures should be imposed only in limited circumstances. Once the "close judicial scrutiny" that governs resolution of such requests is applied here it is clear that the government has not demonstrated a sufficiently compelling reason to seek an anonymous and partially sequestered jury.[1]

---

[1] See United States v. Thomas, 757 F.2d 1359, 1363 (2d Cir. 1985).

1

## ARGUMENT

## THE GOVERNMENT HAS NOT MADE THE REQUISITE SHOWING TO JUSTIFY EMPANELLING AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY

## Use of an Anonymous Jury Would Violate Mr. Medunjanin's Rights Under the Fifth and Sixth Amendments to A Fair Trial, An Impartial Jury and Meaningful Voir Dire

In <u>United States v. Thomas</u>, 757 F.2d 1359, 1365 (2d Cir. 1985), the Second Circuit outlined the controlling standards for determining when the use of an anonymous jury is constitutional. To justify empanelling an anonymous jury, the government must show that there is a "strong reason to believe that the jury needs protection." <u>United States v. Paccione</u>, 949 F.2d 1183, 1192 (2d Cir. 1991). If that prerequisite is satisfied, a District Court must "balance the government's interest in safeguarding jurors with the defendant's interest in avoiding erosion of the presumption of innocence." <u>United States v. Coonan</u>, 664 F.Supp. 861, 862 (S.D.N.Y. 1987). Several factors should guide a District Court's decision on whether the balance weighs in favor of juror anonymity: 1) the seriousness of the offenses charged, and whether defendants are alleged to be part of a group that possesses the means to harm jurors, 2) whether defendants have engaged in past attempts to interfere with the judicial process, and 3) the degree of pretrial publicity. <u>Id</u>.

Here, the government has not made the requisite showing – that factors <u>in this case</u> demonstrate that there is "strong reason to believe that the jury needs protection." Instead of pointing to specific aspects of this case that demonstrate

2

that jurors, if identified, would be in danger, the government makes broad characterizations:

- the nature of the underlying crimes establishes a substantial threat to the judicial process

- al Qaeda presents an undeniable worldwide threat

- one need not conjure up worse-case scenarios to observe that even the mere possibility that the defendant's co-conspirators in al-Qaeda, or their sympathizers, might threaten the judicial process in this case

(Government's Memorandum at 11.)

Rhetoric aside, the government's argument boils down no more than that Mr. Medunjanin's purported association with a terrorist organization alone is sufficient to justify empanelling an anonymous jury. The Second Circuit has disapproved the substitution of stereotyping for analysis in this area. United States v. Vario, 943 F.2d 236 (2d Cir. 1991), illustrates this point. The government alleged that Vario and others conspired to conduct the affairs of a union through a pattern of racketeering activity. In response to concerns raised by the District Court *sua sponte*, the government moved to empanel an anonymous jury. The government offered three grounds in support of its motion: 1) Vario allegedly was a member of the Lucchese crime family, and another unrelated trial in an organized crime case "showed the sensitivity of jurors to intimidation by organized crime"; 2) Vario's co-conspirators had used grand jury tampering as one method of further their RICO conspiracy, and 3) jurors would be intimidated by the publicity surrounding the case. The District Court granted the motion, relying on the allegations of mob ties and grand jury tampering.

3

The Second Circuit upheld the decision to empanel an anonymous jury on the basis of the conspirators' past grand jury tampering and the likelihood of extensive publicity. However, the Circuit Court explicitly disapproved of the District Court's reliance on Varios' purported connection to organized crime. While "the specter of organized crime" had played into past Circuit decisions upholding the use of anonymous juries, in those cases "it was the reasonable likelihood of juror intimidation, not the incantation of the words, 'the mob' or 'organized crime' that prompted the anonymous jury." Id. at 241.

The holding that emerges from Vario is that a defendant's purported connection to a group associated with violent activities justifies using an anonymous jury only if that "connection has some direct relevance to the question of jury fears or safety in the trial at hand, beyond the innuendo that this connection conjures up." Id. Here, the government does nothing more than invoke the specter of al Qaeda and terrorism as a justification for the extreme steps of empanelling and partially sequestering an anonymous jury.

The inadequacy of the government's showing becomes clear when it is contrasted with the circumstances that were present in cases in which the Second Circuit approved the use of an anonymous jury. Those cases share a controlling theme. In each the government offered specific reasons to believe that the defendants would be inclined to bribe or intimidate or harass the jurors. The cases the government cites – United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2009); United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007); United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994); United States v. Paccione, 949

4

F.2d at 1192; United States v. Thomas, 757 F.2d at 1364 – support this proposition.

In Stewart, the government alleged that attorney Lynne Stewart circumvented Special Administrative Measures ("SAMs") imposed on her client Sheikh Abdel Rahman by the Bureau of Prisons. Stewart affirmed under penalty of perjury that she would abide by the terms of the SAMs, which prohibited her from using her contact with Sheikh Rahman to pass messages between him and third parties. Nevertheless, Stewart brought messages for the Sheikh into BOP facilities and communicated messages from him to the outside world. Ms. Stewart was charged, *inter alia*, with conspiring to defraud the United States by violating the SAMs. The District Court empanelled an anonymous jury, and the Second Circuit found that in doing so the Court had not abused its discretion.

Admittedly, the charges in Stewart were related to terrorism. However, that was not the sole reason the Second Circuit affirmed. Rather, the Court specifically relied on the fact that the charges against Stewart were "in significant part about [the defendants'] alleged corruption of the judicial process." Stewart, 590 F.3d at 125. Thus, there was a strong, specific reason to believe that the jury could be at risk.

Quinones shared that characteristic. The indictment in that case included a charge that the defendants had murdered a confidential informant because he had cooperated with law enforcement. In affirming the District Court's decision to use an anonymous jury, the Second Circuit noted that it had previously "identified strong reasons to believe that a jury needed protection in situations where the

5

government demonstrated a defendant's willingness to tamper with the judicial process." Quinones, 511 F.3d at 295. The nature of the charges – murdering an informant – demonstrated that willingness. The Second Circuit also noted the seriousness of the crimes charged and the likelihood of pre-trial publicity, but specifically declined to find whether those grounds alone would "have supported the challenged decision." Id. at 296.

Paccione was a RICO prosecution brought based on the defendants' purported involvement in an illegal waste-dumping scheme. In seeking an anonymous jury, the government filed affirmations that included, *inter alia,* information that a government witness had recently received a middle-of-the-night anonymous telephone call telling him that he would be safe so long as he "remembered nothing" and that a co-defendant's murder was related to the present case and had been arranged by one or more of the defendants. Thus, in Paccione, as in Stewart and Quinones, the District Court had a particular, case-related reason to conclude that the defendants would be willing to tamper with the jury.

Thomas follows this paradigm. In Thomas eight defendants were tried on RICO charges. In seeking an anonymous jury, the government presented very strong arguments: The predicate acts supporting the RICO charges included murders, attempted murders and narcotics trafficking. The indictment alleged that the murder victims included government witnesses. The government submitted information from a cooperating witness that one of the defendants had bribed a juror in a past trial, which resulted in a hung jury. Even in these circumstances,

6

the Second Circuit was cautious in approving the use of an anonymous jury: "Nevertheless, we do not mean to say that the practice of impaneling an anonymous jury is constitutional in all cases. As should be clear from the above analysis, there must be, first, strong reason to believe that the jury needs protection and, second, reasonable precautions must be taken to minimize the effect that such a decision might have on the jurors' opinions of the defendants." Thomas, 727 F.2d at 1365.

The other key cases in the area -- United States v. Gotti, 459 F.3d 296, 346 (2d Cir. 2006); United States v. Thai, 29 F.3d at 801; United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993); United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989) – all presented circumstances that gave rise to a reasonable inference that the defendants might attempt to tamper with or harm jurors. In Gotti, the defendants, including Peter Gotti, were "powerful members of an organized crime family," two of whom were charged *inter alia* with witness tampering in connection with grand jury testimony. In Thai, the government demonstrated that the "defendants sought directly to interfere with the judicial process" by threatening and ultimately killing a civilian witness in an attempt to thwart a fellow gang member's pending robbery prosecution. In Locasio, John Gotti was a defendant, and there was evidence of previous instances of jury tampering by Gotti and his associates. An anonymous jury was appropriate in Tutino because the defendants had serious criminal records and a history of jury tampering.

Admittedly in each of those cases the fact that the defendants were charged with serious crimes and that their trials were likely to generate substantial publicity were factors that the Second Circuit found appropriately weighed in favor of empanelling an anonymous jury. However, each case had an additional factor that allowed the reviewing courts to determine that there was in reality a strong reason to believe that the jurors needed to be protected. See United States v. Gambino, 818 F.Supp. 536, 540 (E.D.N.Y. 1993)(denying government's request for anonymous jury where there was no evidence that the defendants either participated in or directed efforts to obstruct justice, tamper with juries or intimidate witnesses).

In contrast to the case in which the Second Circuit has found the use of an anonymous jury to be appropriate, the government here has offered no evidence – indeed has made no specific claim – that the jurors might be at risk. Rather, the government relies solely on the fact that Mr. Medunjanin is charged with crimes related to terrorism and that the case likely will garner pre-trial publicity. Finding that these assertions alone are sufficient to warrant an anonymous jury would in essence create a *per se* rule that an anonymous jury always is appropriate in cases related to terrorism since all such cases will generate pre-trial publicity and all such cases run the risk of making potential jurors uncomfortable. Indeed, the government all but advocates for such a rule, arguing that "terrorism cases will generally easily satisfy" the standards for empanelling an anonymous jury. (Government Memorandum at 9.) This, of course, is not what the controlling case law permits. Rather, the Second Circuit has held that a defendant's vital

8

constitutional rights to an impartial jury, to the presumption of innocence and to be able to intelligently conduct *voir dire* may be infringed only if "close judicial scrutiny" yields strong cause to believe that jurors do need protection. That standard is not met in this case.

## Jury Sequestration is Not Justified in this Case

In support of its request for partial sequestration the government argues that some dire, albeit undefined, consequences might follow if the jurors "were permitted to interact freely with the public in the courthouse during recesses and at the beginning and end of each trial day." (Government's Memorandum at 13.) However, the government offers no particulars as to what harm might occur. Instead, the government cites a *New York Times* article that indicates that a juror in another case choose to speak to the press after the case was concluded. (Id. at 12-13.) This, of course, a juror has every right to do. What is missing from the government's argument is any proof – or assertion – that the jurors cannot be trusted to follow the oath this Court will administer admonishing the jurors not to talk about the case with anyone before deliberations are concluded and they are discharged. Of course, this law presumes that jurors will follow the instructions a court gives them. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

In contrast to the clear absence of justification for partially sequestering the jurors is the clear prejudice that sequestration could generate. Even more than telling the jurors not to provide any identifying information about themselves, guarding the jurors, isolating them from the public and transporting them to court sends the message that they are in danger. It will be equally clear to the jurors

9

which side purportedly poses that threat. While the constitution may not prohibit burdening a defendant's Fifth and Sixth Amendment rights in this manner where a substantial showing of need has been made, here that proof is absent.

## **CONCLUSION**

It is respectfully submitted that this Court should deny the government's motion to empanel an anonymous jury and to keep the jurors partially sequestered.

Dated: New York, New York
February 8, 2012

Respectfully submitted,

_____/s/_____
Stephanie Carvlin sc9161
Robert C. Gottlieb
Mitchell Dinnerstein
Celia Gordon
Justin Heinrich
Counsel for Adis Medunjanin