DMB:JPL/BWB
F.#2010R00057

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            10-CR-19 (S-4)(JG)

      - against -

ADIS MEDUNJANIN,
      also known as "Muhammad,"

                  Defendant.

- - - - - - - - - - - - - - X


THE GOVERNMENT'S REQUEST TO CHARGE


                        LORETTA E. LYNCH
                        UNITED STATES ATTORNEY
                        Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201


David Bitkower
James P. Loonam
Berit W. Berger
Assistant United States Attorneys
      (Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully requests that the Court include the attached instructions in its charge to the jury and requests leave to offer such other and additional instructions as may become appropriate during the course of the trial.

Because Counts Six and Ten of the Superseding Indictment do not name the defendant, the government's proposed instructions have renumbered the counts for the jury, in the order in which they appear in the Superseding Indictment, as Counts One through Nine.

REQUEST NO. 1

General Requests

The government requests that the Court charge the jury in its usual manner on the following subjects:

(a)  Function of the Court, the Jury, and Counsel;

(b)  Jury Communications with Lawyers and the Court;

(c)  Equality of the Prosecution and the Defense before the Court;

(d)  Presumption of Innocence;

(e)  Burden of Proof and Reasonable Doubt;

(f)  Function of the Indictment and What is Not Evidence;

(g)  Circumstantial Evidence and Direct Evidence;

(h)  Inferences Drawn from the Evidence;

(i)  All Available Evidence Need Not Be Produced;

(j)  Stipulations;

(k)  Objections;

(l)  Credibility of Witnesses and Discrepancies in Testimony;

(m)  Jury's Right to See Exhibits and Have Testimony Read During Deliberations;

(n)  No Inference to be Drawn From Defendant's Failure to Testify (if applicable);

(o)  Testimony of Defendant (if applicable);

3

(p)   Questioning Wisdom of Law or Basing Verdict on Sympathy or Prejudice Prohibited;

(q)   Considerations of Punishment Not the Province of the Jury;

(r)   Dates in Indictment are Approximate;

(s)   Specific Law Enforcement Techniques Not Required;

(t)   Meaning of "And" in the Indictment;

(u)   Use of Charts and Summary Exhibits; and

(v)   Use of Interpreters.

REQUEST NO. 2

Knowing and Intentional Conduct

Most of the counts in the Indictment require the government to prove that the defendant acted knowingly and intentionally.  A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness.  Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

A person acts intentionally when he acts deliberately and purposefully.  That is, the defendant's acts must have been the product of defendant's conscious objective rather than the product of a mistake or accident.

Authority

Sand et al., Modern Federal Jury Instructions ("Sand"), Form Instructions 3A-1 and 3A-4.

REQUEST NO. 3

Conspiracy

With respect to Counts One, Two, Four, and Six, the defendant is charged with being part of a conspiracy. Specifically, with respect to Count One, he is charged with being part of a conspiracy to use weapons of mass destruction; with respect to Count Two, he is charged with conspiring to commit murder in a foreign country; with respect to Count Four, he is charged with conspiring to provide material support to al-Qaeda; and with respect to Count Six, he is charged with conspiring to commit an act of terrorism transcending national boundaries.

A conspiracy is a kind of criminal partnership – a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."  Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the conspiracy was not actually committed.  Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.  This is because collective

6

criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

There are two elements that all conspiracy charges require.  First, the government must prove the existence of the charged conspiracy.  Second, the government must prove that the defendant was a member of the charged conspiracy.  As you will see, sometimes there are additional elements as well, but all conspiracy charges have those two elements in common.

To establish the existence of a conspiracy, the government is not required to show that two or more people sat around a table and entered into a contract, orally or in writing, stating that they had formed a conspiracy and spelling out all the details.  Common sense tells you that when people agree to enter into a criminal conspiracy, much is left to the unexpressed understanding.  Common sense tells you that criminal coconspirators do not usually reduce their agreements to writing, or publicly broadcast their plans.  It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

In order to show that a conspiracy existed, the evidence must show that two or more people — in some way or manner, through any means, explicitly, implicitly, or even

7

tacitly — came to an understanding to violate the law and to accomplish an unlawful plan.

In determining whether there has been an unlawful agreement as alleged, you may judge the acts and the conduct of the alleged co-conspirators that were done to carry out the apparent criminal purpose.  The old adage, "actions speak louder than words" applies here.  Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators.  However, when taken all together, and with the reasonable inferences that flow from them, those acts and conduct may show a criminal agreement as satisfactorily and conclusively as would direct proof.

So, you must first determine whether or not the proof established beyond a reasonable doubt the existence of the conspiracy as charged in the Indictment.

In considering this first element as to Counts One, Two, Four, and Six, you should consider all the evidence admitted with respect to the conduct and statements of each alleged co-conspirator and such inferences as may be reasonably drawn from them.  It is sufficient to establish the existence of the conspiracy if, as I've already said, from the proof of all the relevant facts and circumstances, you find beyond a reasonable

doubt that the minds of at least two alleged co-conspirators met in an understanding way — that is, that they agreed, as I have explained the conspiratorial agreement to you, to work together in furtherance of the unlawful scheme alleged in the Indictment.

The second element that the government must prove with respect to each charged conspiracy is that the defendant became a member of the conspiracy with knowledge of its criminal goal and intending by his actions to help it succeed. Merely being present at a place where criminal conduct is underway does not make a person a member of a conspiracy to commit a crime. What is required is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy, and with the intention of aiding in the accomplishment of its unlawful goal.

The extent of a defendant's participation in a conspiracy has no bearing on the issue of guilt. Each conspiracy, each member of a conspiracy, rather, may perform separate and distinct acts and may perform them at different times. Some conspirators might play major roles. Others may play minor roles. A defendant need not have known the identities of each and every member of the scheme. He need not have been fully informed as to all of the details or scope of the

conspiracy.  He does not have to be a member of it for the entire time of its existence.

The key inquiry is whether the defendant joined the conspiracy charged with an awareness of at least some of the basic aims and purposes of the unlawful agreement and with the intent to help it succeed.

<u>Authority</u>

Sand, Form Instructions 19-2, 19-3, 19-4, 19-6; Charge of the Hon. John Gleeson in <u>United States v. Betim Kaziu</u>, 09-CR-660 (S-1)(JG); charge of the Hon. Dora L. Irizarry in <u>United States v. DeFreitas et al.</u>, 07-CR-543 (E.D.N.Y. 2010)(DLI).  <u>See generally</u> <u>United States v. Rea</u>, 958 F.2d 1206, 1214 (2d Cir. 1992); <u>United States v. Montour</u>, 944 F.2d 1019, 1025 (2d Cir. 1991).

REQUEST NO. 4

Acts and Declarations of Co-Conspirators

I have admitted into evidence against the defendant the
acts and statements of others because these acts and statements
were committed by persons who, the government charges, were also
confederates or co-conspirators of the defendants on trial.

The reason for allowing this evidence to be received
against the defendant has to do with the nature of the crime of
conspiracy.  A conspiracy is often referred to as a partnership
in crime.  Thus, as in other types of partnerships, when people
enter into a conspiracy to accomplish an unlawful end, each and
every member becomes an agent for the other conspirators in
carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts,
declarations, statements and omissions of any member of the
conspiracy and in furtherance of the common purpose of the
conspiracy, are deemed, under the law, to be the acts of all of
the members, and all of the members are responsible for such
acts, declarations, statements and omissions.

If you find, beyond a reasonable doubt, that the
defendant was a member of the conspiracy charged in the
Indictment, then, any acts done or statements made in furtherance
of the conspiracy by persons also found by you to have been

11

members of that conspiracy, may be considered against that defendant.  This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme.  If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may not be considered by you as evidence against the defendant.

<u>Authority</u>

Sand, Form Instruction 19-9.

12

REQUEST NO. 5

Count Two

Conspiracy to Commit Murder in a Foreign Country

Count Two of the Indictment reads as follows:

In or about and between January 2008 and
September 2008, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere within the
jurisdiction of the United States, the
defendant ADIS MEDUNJANIN, also known as
"Muhammad," together with others, did
knowingly and intentionally conspire to
commit outside the United States one or more
acts that would constitute the offenses of
murder and maiming if committed in the
special maritime and territorial jurisdiction
of the United States, and one or more of the
conspirators did commit an act within the
jurisdiction of the United States to effect
an object of the conspiracy.

In furtherance of the conspiracy and to
effect its objects, the defendant ADIS
MEDUNJANIN, together with others, knowingly
committed and caused to be committed, among
others, the following overt acts:

a.  In or about and between July 2008 and
August 2008, both dates being approximate and
inclusive, in Queens, New York, the defendant
ADIS MEDUNJANIN, together with others, to
wit: Najibullah Zazi and Zarein Ahmedzay,
attempted to recruit [Zakir Khan] to travel
overseas with them to wage violent jihad.

b.  On or about August 28, 2008, the
defendant ADIS MEDUNJANIN, together with
others, to wit: Najibullah Zazi and Zarein
Ahmedzay, traveled from Queens, New York to
Newark Liberty International Airport in
Newark, New Jersey.

13

c.  On or about August 28, 2008, the defendant ADIS MEDUNJANIN, together with others, to wit: Najibullah Zazi and Zarein Ahmedzay, boarded a flight at Newark Liberty International Airport to fly from Newark, New Jersey to Doha, Qatar and Peshawar, Pakistan.

The statute relevant to Count One is Section 956(a)(1) of Title 18, United States Code, which provides in relevant part:

Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder . . . or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished.

14

REQUEST NO. 6

Elements of Count Two
(18 U.S.C. § 956)

For convenience, I have not taken the counts in the order in which they appear in the Indictment.  Instead, I have started with Count Two.

To prove the defendant guilty of Count Two, government must establish each of the following elements beyond a reasonable doubt:

First, that there was a conspiracy among two or more persons to commit murder or to maim somebody outside the United States;

Second, that the defendant became a member of that conspiracy with knowledge of its criminal goal and intending by his actions to help it succeed;

Third, that the defendant joined the conspiracy while he was in the United States.

Fourth, that at least one conspirator - not necessarily the defendant - committed an overt act within the United States in furtherance of the conspiracy.

With respect to the first and second element of this count, I have previously instructed you on the law governing conspiracy.  Federal law defines murder as the unlawful killing

15

of a human being with malice aforethought.  To kill with "malice aforethought" means to have, at the time of the killing, an intent to take the life of another person either deliberately and intentionally, or to willfully act with callous and wanton disregard for human life.  The term "maim" means to mutilate or disfigure.

The third element is that the defendant, having joined the conspiracy, participated in the conspiracy while he was within the United States.  It is not necessary that the conspiracy was formed in the United States.  The only requirement is that the defendant was part of the conspiracy during some period of time while he was within the United States.  The location of those with whom the defendant conspired is irrelevant.

With respect to the fourth element, you must find beyond a reasonable doubt that one or more of the conspirators, but not necessarily the defendant, knowingly committed at least one overt act within the jurisdiction of the United States in furtherance of the object of the conspiracy.

The overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage.  The requirement of an overt act is a requirement that

some step or action to further the conspiracy be taken during the life of the conspiracy by one of the co-conspirators.

The government alleges here that the defendant and two co-conspirators, Najibullah Zazi, and Zarein Ahmedzay, committed the overt acts set forth in the Indictment and which I previously read.  In order for the government to satisfy the overt act requirement, it is not necessary for the government to prove all or even any of the particular overt acts alleged in the Indictment.  Nor must you find that the defendant himself committed an overt act.

It is sufficient for the government to show that the defendant, or one of his alleged co-conspirators, knowingly committed an overt act in furtherance of the conspiracy — whether or not that particular overt act is listed in the Indictment.

You should bear in mind that the overt act, standing alone, may itself be an innocent, lawful act.  Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding, or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which in and of itself is criminal. Similarly, an overt act does not have to, itself, constitute an objective of the conspiracy.

17

<u>Authority</u>

Adapted from Sand, Form Instructions 19-7 and 19-8
(over act requirement), 41-6 (malice aforethought); charge of the
Hon. John Gleeson in <u>United States v. Betim Kaziu</u>, 09-CR-660 (S-
1)(JG); charge of the Hon. Dora L. Irizarry in <u>United States v.
DeFreitas et al</u>., 07-CR-543 (E.D.N.Y. 2010)(DLI).

REQUEST NO. 7

Count Three

Providing Material Support to a Foreign Terrorist Organization

Count Three of the Indictment reads as follows:

In or about and between September 2008 and January 2010, both dates being approximate and inclusive, within the Easter District of New York and elsewhere, including the extraterritorial jurisdiction of the United States, the defendant ADIS MEDUNJANIN, also known as "Muhammad," together with others, did knowingly and intentionally provide material support and resources, as defined in 18 U.S.C. § 2339A(b), including currency, explosives, [and] personnel, to a foreign terrorist organization, to wit: al-Qaeda, which has been designated by the Secretary of State as a foreign terrorist organization since 1999, pursuant to Section 219 of the Immigration and Nationality Act.

The statute relevant to Count Three is Section 2339B(a)(1) of Title 18, United States Code, which provides in relevant part:

Whoever knowingly provides material support or resources to a foreign terrorist organization . . . shall be punished.

19

REQUEST NO. 8

Elements of Count Three
(18 U.S.C. § 2339B(a)(1))

To prove a violation of Section 2339B(a)(1), the government must establish each of the following elements beyond a reasonable doubt:

First, that the defendant provided material support or resources;

Second, that the defendant provided this support or these resources to a foreign terrorist organization, specifically al-Qaeda;

Third, that the defendant did so knowingly and intentionally; and

Fourth, that the defendant is a national of the United States.

With respect to the first element of this count, you must find beyond a reasonable doubt that the defendant provided material support or resources, namely currency, explosives or personnel.  The term personnel means one or more persons, which can include a defendant's own person.  The defendant can be convicted for a violation of this statute in connection with providing personnel if you find that he has knowingly provided

20

one or more individuals, which may include himself, to work under the direction or control of al-Qaeda.

If you should find beyond a reasonable doubt that a defendant provided support or resources in any of these forms, the government's burden with respect to the first element has been met.

The second element you must find beyond a reasonable doubt is that the defendant provided these resources to a foreign terrorist organization, namely, al-Qaeda.  I instruct you as a matter of law that al-Qaeda has been designated a foreign terrorist organization by the United States Secretary of State, and was so designated by the Secretary on October 8, 1999. Consequently, if you find beyond a reasonable doubt that the defendant provided any of the types of "material support or resources" I have just enumerated to al-Qaeda, or furnished it to any person acting on behalf of al-Qaeda, during the period charged in the Indictment, the government's burden with respect to this element has been met.

The third element you must find beyond a reasonable doubt is that in providing material support or resources to al-Qaeda, the defendant did so knowingly and intentionally.  I previously explained to you the definitions of "knowingly" and "intentionally."  For this element to be satisfied, the

21

government must prove that the defendant knew one of the following three things: (1) that al-Qaeda had been designated by the Secretary of State as a "foreign terrorist organization"; (2) that al-Qaeda engaged in "terrorist activity"; or (3) that al-Qaeda engaged in "terrorism."

For these purposes, the term "terrorist activity" includes any of the following actions:

1. Hijacking or sabotage of an aircraft, vessel, vehicle, train, or other conveyance;

2. Seizing, detaining, or threatening to kill, injure or further detain another person to compel or coerce some third party, including a government, to do or abstain from doing some act;

3. A violent attack upon an internationally protected person, including employees and officials of governments or international organizations;

4. Assassination;

5. Use of any chemical, biological, or nuclear weapons or device, with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property;

6. Use of any explosive, firearm, or other weapon or dangerous device, other than for monetary gain and with intent to

endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property; or

7.   A threat, attempt, or conspiracy to do any of the foregoing.

For these purposes, the term "terrorism" means premeditated, politically motivated violence perpetrated against noncombatant targets by sub-national groups or clandestine agents.

For the fourth element, you must find beyond a reasonable doubt that the defendant is a national of the United States, as described by the Immigration and Nationality Act.  A United States citizen is considered a national of the United States for purposes of this statute.


<u>Authority</u>

Adapted from charge of the Hon. John Gleeson in <u>United States v. Betim Kaziu</u>, 09-CR-660 (S-1)(JG); charge of the Hon. Sterling Johnson Jr. in <u>United States v. Al-Moayad</u>, E.D.N.Y., 03 CR 1322 (SJ).

23

REQUEST NO. 9

Count Four

Conspiracy to Provide Material
Support to a Foreign Terrorist Organization

Count Four of the Indictment reads as follows:

In or about and between September 2008 and
January 2010, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere, including the
extraterritorial jurisdiction of the United
States, the defendant ADIS MEDUNJANIN, also
known as "Muhammad," together with others,
did knowingly and intentionally conspire to
provide material support and resources, as
defined in 18 U.S.C. § 2339A(b), including
currency, explosives, [and] personnel, to a
foreign terrorist organization, to wit: al-
Qaeda, which has been designated by the
Secretary of State as a foreign terrorist
organization since 1999, pursuant to Section
219 of the Immigration and Nationality Act.

The statute relevant to Count Four is Section

2339B(a)(1) of Title 18, United States Code, which provides in

relevant part:

Whoever knowingly provides material support
or resources to a foreign terrorist
organization, or . . . conspires to do so,
shall be punished.

REQUEST NO. 10

Elements of Count Four
(18 U.S.C. § 2339B(a)(a))

To prove a violation of Section 2339B(a)(1), the
government must establish each of the following elements beyond a
reasonable doubt:

First, that there was a conspiracy among two or more
persons to provide material support or resources to a foreign
terrorist organization, specifically al-Qaeda.

Second, that the defendant became a member of that
conspiracy with knowledge of its criminal goal and intending by
his actions to help it succeed;

Third, that the defendant did so knowingly and
intentionally;

Fourth, that the defendant was a national of the United
States.

With respect to the first element of this count, I have
previously instructed you on the law governing conspiracy.

With respect to the second element of this count, you
must find beyond a reasonable doubt that the object of the
conspiracy was to provide material support and resources, namely
currency, explosives, or personnel.  These terms have the same
meaning as I explained in connection with Count Three.

25

With respect to the third element of this count, you must find beyond a reasonable doubt that the defendant entered into the conspiracy "knowingly" and "intentionally."  I previously explained to you the definitions of "knowingly" and "intentionally" in connection with Count One.  In addition, as I previously explained in connection with Count Three, the government must prove that the defendant took part in the conspiracy knowing that (1) al-Qaeda was designated as a foreign terrorist organization; (2) al-Qaeda engaged in terrorist activity, as defined above, or (3) al-Qaeda engaged in terrorism, as defined above.

For the fourth element, you must find beyond a reasonable doubt that the defendant is a national of the United States, as described by the Immigration and Nationality Act.  A United States citizen is considered a national of the United States for purposes of this statute.


<u>Authority</u>

<u>See</u> Count Three, <u>supra</u>.

26

REQUEST NO. 11

Count Five

Receiving Military-Type Training
From a Foreign Terrorist Organization

Count Five of the Indictment reads as follows:

In or about and between September 2008 and
October 2008, both dates being approximate
and inclusive, within the extraterritorial
jurisdiction of the United States, the
defendant ADIS MEDUNJANIN, also known as
"Muhammad," together with others, did
knowingly and intentionally receive military-
type training, as defined in 18 U.S.C.
§ 2339D(c)(1), from and on behalf of a
foreign terrorist organization, to wit: al-
Qaeda, which has been designated by the
Secretary of State as a foreign terrorist
organization since October 1999, pursuant to
Section 219(a)(1) of the Immigration and
Nationality Act.

The statute relevant to Count Five is Section

2339D(a)(1) of Title 18, United States Code, which provides in

relevant part:

Whoever   knowingly   receives   military-type
training from or on behalf of any organization
designated at the time of the training by the
Secretary of State under section 219(a)(1) of
the  Immigration  and  Nationality  Act  as  a
foreign terrorist organization shall be fined
under this title or imprisoned for ten years,
or both.

27

REQUEST NO. 12

Elements of Count Five

To prove a violation of Section 2339D, the government must establish each of the following elements beyond a reasonable doubt:

First, that the defendant received military-type training from a foreign terrorist organization, specifically al-Qaeda;

Second, that the defendant did so knowingly and intentionally; and

Third, that the defendant is a national of the United States.

With respect to the first element, "military-type training" is defined to include training in means or methods that can cause death or serious bodily injury, or destroy or damage property; or training on the use, storage, production, or assembly of any explosive, firearm, or other weapon, including any explosive bomb, grenade, or similar device.  "Serious bodily injury" means bodily injury that involves a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty.

I have already instructed you that al-Qaeda has been designated a foreign terrorist organization by the United States Secretary of State.

The second element you must find beyond a reasonable doubt is that the defendant received the training knowingly and intentionally.  I previously explained to you the definitions of "knowingly" and "intentionally."  For this element to be satisfied, the government must prove that the defendant knew that (1) al-Qaeda had been designated by the Secretary of State as a "foreign terrorist organization," or (2) the defendant knew that al-Qaeda engaged in "terrorist activity," or (3) the defendant knew that al-Qaeda engaged in "terrorism."  I have already defined all of these terms with respect to Counts Three and Four.

For the third element, you must find beyond a reasonable doubt that the defendant is a national of the United States, as described by the Immigration and Nationality Act.  A United States citizen is considered a national of the United States for purposes of this statute.

<u>Authority</u>

Title 18, United States Code, Sections 921(a)(4); 2332a(c)(2); 2339D(a), (b)(1), (c)(1), and (c)(2).

29

REQUEST NO. 13

Count One

Conspiracy To Use Weapons of Mass Destruction

Count One of the Indictment reads as follows:

In or about and between September 2008 and
September 2009, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere, the defendant ADIS
MEDUNJANIN, also known as "Muhammad," did
knowingly and intentionally and without
lawful authority conspire to use one or more
weapons of mass destruction, to wit:
explosive bombs and other similar explosive
devices, against persons and property within
the United States, and: (1) facilities of
interstate and foreign commerce, to wit: e-
mail and the internet, were used in
furtherance of the offense, (2) one or more
perpetrators, to wit: the defendant ADIS
MEDUNJANIN and others, traveled in interstate
and foreign commerce, and (3) the offense and
the results of the offense would have
affected interstate and foreign commerce.

The statute relevant to Count One is Section

2332a(a)(2) of Title 18, United States Code, which provides in

relevant part:

A person who, without lawful authority, uses,
threatens, or attempts or conspires to use, a
weapon of mass destruction . . . against any
person or property within the United States,
[where] the mail or any facility of
interstate or foreign commerce is used in
furtherance of the offense; . . . any
perpetrator travels in or causes another to
travel in interstate or foreign commerce in
furtherance of the offense; or . . . the
offense, or the results of the offense,

30

affect interstate or foreign commerce, or, in
the case of a threat, attempt, or conspiracy,
would have affected interstate or foreign
commerce; shall be [punished].

REQUEST NO. 14

Elements of Count One
(18 U.S.C. § 2332a(a)(2))

To prove a violation of Section 2332a(a)(2), the
government must establish each of the following elements beyond a
reasonable doubt:

First, that there was a conspiracy among two or more
persons to use weapons of mass destruction against persons and
property within the United States;

Second, that the defendant became a member of that
conspiracy with knowledge of its criminal goal and intending by
his actions to help it succeed; and

Third, that a jurisdictional element has been met.

With respect to the first and second elements of this
count, I have previously instructed you on the law governing
conspiracy.  The term "weapon of mass destruction" means a
destructive device, including any explosive bomb or similar
device.

With respect to the third element, the government must
prove that (1) the mail or any facility of interstate or foreign
commerce was used to further the offense; (2) any perpetrator
traveled in or caused another to travel in interstate or foreign
commerce to further the offense; or (3) that the offense would

32

have affected interstate or foreign commerce.  The term "interstate commerce" includes any movement or transportation of persons, goods, wares, merchandise, securities or money from one state into another state, the District of Columbia, and any commonwealth, territory, or possession of the United States.  The term "facility of interstate commerce" includes means of transportation and communication, such as interstate telephone or interstate communications.  The term "foreign commerce" includes commerce between the United States and any foreign country.

The jurisdictional element is satisfied if a minimal effect on interstate or foreign commerce is shown.  The effect does not need to be a direct effect.  Any effect, even if it is postponed, indirect or slight, is sufficient to satisfy the interstate or foreign commerce element.  It also does not matter whether the effect is harmful or beneficial to interstate or foreign commerce.

## Authority

Adapted from Sand, Eleventh Circuit Pattern Jury Instructions, Form Instruction 90; charge of the Hon. M. Margaret McKeown in United States v. Love, 10-CR-2418 (S.D. Cal. 2011) (instructions 10, 15-17), 2011 WL 2654009 (June 3, 2011); United States v. Wise, 221 F.3d 140, 150 (5th Cir. 2000) (existence of

lawful authority is an affirmative defense); <u>United States v.
Giordano</u>, 442 F.3d 30, 39-40 (2d Cir. 2006) (interstate
commerce).

REQUEST NO. 15

Count Six

Conspiracy To Commit an Act of
Terrorism Transcending National Boundaries

Count Six of the Indictment reads as follows:

In or about and between September 2008 and
January 2010, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere and involving conduct
transcending national boundaries, the
defendant ADIS MEDUNJANIN, also known as
"Muhammad," together with others, did
knowingly and intentionally conspire to kill,
maim, commit an assault resulting in serious
bodily injury and assault with a dangerous
weapon one or more persons within the United
States, in violation of Sections 120.05(1),
120.05(2) and 125.25(1) of the New York State
Penal Law, and (1) one or more facilities of
interstate and foreign commerce, to wit: e-
mail, the internet and a cellular telephone,
were used in furtherance of the offense, and
(2) the offense would have affected
interstate and foreign commerce if
consummated.  In furtherance of the
conspiracy and to effect the objects thereof,
the defendant ADIS MEDUNJANIN, together with
others, knowingly committed and caused to be
committed, among others, the following:

a.  In or about September 2008, the defendant
FNU LNU, also known as "Ahmad" and "Zahid,"
transported the defendant ADIS MEDUNJANIN,
Najibullah Zazi and Zarein Ahmedzay to
Waziristan so that they could receive
military training from al-Qaeda.

b.  In or about and between September 2008
and December 2008, both dates being
approximate and inclusive, ADNAN EL
SHUKRIJUMAH, together with others, including

35

FNU LNU, also known as "Abdul Hafeez," "Abdul Hafidh" and "Saleh al-Somali," recruited and directed the defendant ADIS MEDUNJANIN, Najibullah Zazi and Zarein Ahmedzay to conduct a terrorist attack in the United States.

c.  On or about September 25, 2008, the defendant ADIS MEDUNJANIN boarded a flight in Peshawar, Pakistan, with an ultimate destination of Newark Liberty International Airport in Newark, New Jersey.

d.  In or about November 2008, the defendant FNU LNU, also known as "Ahmad" and "Zahid," transported Najibullah Zazi to Waziristan so that he could receive explosives training from al-Qaeda.

e.  On or about January 15, 2009, Najibullah Zazi boarded a flight in Peshawar, Pakistan, with an ultimate destination of Newark Liberty International Airport in Newark, New Jersey.

f.  On or about January 22, 2009, Zarein Ahmedzay boarded a flight in Peshawar, Pakistan, with an ultimate destination of Newark Liberty International Airport in Newark, New Jersey.

g.  On or about January 7, 2010, the defendant ADIS MEDUNJANIN, while located in Queens, New York, telephoned 911 from a cellular telephone and stated to the operator: "We love death."

h.  On or about January 7, 2010, the defendant ADIS MEDUNJANIN intentionally crashed his automobile on the Whitestone Expressway in Queens, New York, with the intent of killing himself and one or more additional drivers.

The statute relevant to Count Six is Section 2332b(a) of Title 18, United States Code, which provides in relevant part:

> Whoever, involving conduct transcending national boundaries . . . kills, kidnaps, maims, commits an assault resulting in serious bodily injury, or assaults with a dangerous weapon any person within the United States . . . in violation of the laws of any State, or the United States, shall be punished as prescribed in [a later subsection].

REQUEST NO. 16

Elements of Count Six
(18 U.S.C. § 2332b(a))

To prove a violation of Section 2332b(a), the government must establish beyond a reasonable doubt each of the following elements:

First, that there was a conspiracy among two or more persons to kill, maim, commit an assault resulting in serious bodily injury to, or assault with a dangerous weapon, one or more persons within the United States, in violation of the law of any State.

Second, that the defendant became a member of that conspiracy with knowledge of its criminal goal and intending by his actions to help it succeed.

Third, that the offense involved conduct outside the United States as well as conduct inside the United States.

Fourth, that a jurisdictional element is met.

Fifth, that at least one conspirator - not necessarily the defendant - committed an overt act within the United States in furtherance of the conspiracy.

With respect to the first and second elements of this count, I have previously instructed you on the law governing conspiracy, and the definitions of maiming and serious bodily

38

injury.  Whether an object is a dangerous weapon depends on the facts of the particular case; almost any object which as used, or attempted to be used, may endanger life or inflict serious bodily harm can be a deadly or dangerous weapon.

Under the New York Penal Law, a person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person.  Similarly, under the New York Penal Law, a person is guilty of assault when, with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or when, with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a dangerous instrument.  For the purposes of New York State law, "physical injury" means impairment of physical condition or substantial pain.  "Serious physical injury" means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.  A "dangerous instrument" means any instrument, including a vehicle, which, under the circumstances in which it is used or attempted to be used, is readily capable of causing death or other serious physical injury.

The third element is self-explanatory.

The fourth element is satisfied if the government proves beyond a reasonable doubt that one or more facilities of interstate or foreign commerce were used in furtherance of the offense, or the offense would have obstructed, delayed, or affected interstate or foreign commerce if consummated.  I have previously defined the terms interstate and foreign commerce for you.  Although you must find the existence of this circumstance beyond a reasonable doubt, it is unnecessary that the government prove that the defendant actually knew of the existence of such a circumstance.


### Authority

Adapted from charge of the Hon. John C. Coughenor in United States v. Ressam, 99-CR-666 (W.D. Wash.); New York Penal Law Sections 10.00(9), (10), (13), 120.05(1), 120.05(2), 125.25; Sand, Form Instruction 14-10 (dangerous weapon).

REQUEST NO. 17

Count Seven

Attempt to Commit an Act of
Terrorism Transcending National Boundaries

Count Seven of the Indictment reads as follows:

In or about and between September 2008 and
January 2010, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere and involving conduct
transcending national boundaries, the
defendant ADIS MEDUNJANIN, also known as
"Muhammad," together with others, including
Najibullah Zazi and Zarein Ahmedzay, did
knowingly and intentionally attempt to kill,
maim, commit an assault resulting in serious
bodily injury and assault with a dangerous
weapon one or more persons within the United
States, in violation of Sections 120.05(1),
120.05(2) and 125.25(1) of the New York State
Penal Law, and (1) one or more facilities of
interstate and foreign commerce, to wit: e-
mail, the internet and a cellular telephone,
were used in furtherance of the offense, and
(2) the offense would have affected
interstate and foreign commerce if
consummated.

In furtherance of the attempt and to effect
the objects thereof, the defendant ADIS
MEDUNJANIN, together with others, knowingly
committed and caused to be committed, among
others, the overt acts listed [in Count
Seven] paragraph (a) through (h).

The statute relevant to Count Seven is Section 2332b(a)

of Title 18, United States Code, which provides in relevant part:

Whoever, involving conduct transcending
national boundaries . . . kills, kidnaps,
maims, commits an assault resulting in

41

serious bodily injury, or assaults with a
dangerous weapon any person within the United
States . . . in violation of the laws of any
State, or the United States, shall be
punished as prescribed in [a later
subsection].

REQUEST NO. 18

Elements of Count Seven

To prove a violation of Section 2332B(a), the government must establish each of the following elements beyond a reasonable doubt:

First, that the defendant attempted to kill, maim, commit an assault resulting in serious bodily injury to, or assault with a dangerous weapon, one or more persons within the United States, in violation of the law of any State.

Second, that the offense involved conduct outside the United States as well as conduct inside the United States.

Third, that a jurisdictional element is met.

With respect to the first element of this count, I have already defined maiming, serious bodily injury, dangerous weapon, and the relevant New York Penal Law terms in connection with Count Six.  Similarly, I have defined the terms relevant to the second and third elements of this count in connection with Count Six.

An attempt to commit a crime constitutes the commission of a crime.  In order to prove an attempt, it is necessary that the evidence establish beyond a reasonable doubt, first, that the defendant intended to commit the underlying crime; second, that thereafter, the defendant did an act constituting a substantial

43

step toward the commission of the crime.  A defendant attempts a crime when he fails to complete a crime that he intended to commit, but took a substantial step toward completing it.

A substantial step is a step that strongly corroborates the defendant's intent to commit the substantive offense.  Mere preparation which may consist of planning the offense or of devising, obtaining or arranging a means for its commission is not an attempt.  The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the acts are a substantial step in the course of conduct planned to culminate in the commission of the crime.

<u>Authority</u>

Adapted from charge of the Hon. John C. Coughenor in <u>United States v. Ressam</u>, 99-CR-666 (W.D. Wash.); New York Penal Law Sections 10.00(9), (10), (13), 120.05(1), 120.05(2), 125.25; Sand, Form Instruction 14-10 (dangerous weapon); charge of the Hon. John Gleeson in <u>United States v. Kaziu</u>, 09-CR-660 (E.D.N.Y. 2011) (attempt).

44

REQUEST NO. 19

Count Eight

Use of a Firearm or Destructive Device

Count Eight of the Indictment reads as follows:

In or about and between August 2008 and
September 2008, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere, the defendant ADIS
MEDUNJANIN, also known as "Muhammad,"
together with others, including Najibullah
Zazi and Zarein Ahmedzay, did knowingly and
intentionally use and carry one or more
firearms during and in relation to one or
more crimes of violence, to wit: the crimes
charged in Counts Two [and] Five, and did
knowingly and intentionally possess one or
more firearms in furtherance of such crimes
of violence, one or more of which firearms
was discharged, and one or more of which
firearms was a destructive device.

The statute relevant to Count Eight is Section

924(c)(1) of Title 18, United States Code, which provides in

relevant part:

[A]ny person who, during and in relation to
any crime of violence . . . for which the
person may be prosecuted in a court of the
United States, uses or carries a firearm, or
who, in furtherance of any such crime,
possesses a firearm, shall [be guilty of a
federal crime].

45

REQUEST NO. 20

Elements of Count Eight
(18 U.S.C. § 924(c))

To prove a violation of Section 924(c), the government must establish each of the following elements beyond a reasonable doubt:

First, that the defendant is guilty beyond a reasonable doubt of one or more specified crimes of violence, that is, one or more of Counts Two and Five;

Second, that the defendant used or carried a firearm during and in relation to the commission of one of those crimes of violence, or possessed a firearm in furtherance of one of those crimes.

Third, that the defendant acted knowingly and intentionally.

If you find beyond a reasonable doubt that the defendant violated Section 924(c), you should find him guilty of Count Eight.  You must then also determine whether the government has proved beyond a reasonable doubt each of the following two additional facts:

Fourth, whether one or more of the firearms involved in the offense was discharged; and

46

Fifth, whether one or more of the firearms involved in the offense was a destructive device.

With respect to the first element, I have already instructed you on what you must find in order to find the defendant guilty of Counts Two and Five.

With respect to the second element, a "firearm," under federal law, is any weapon which will expel a projectile by the action of an explosive, or that is designed for such use or may readily be converted for such use.  To satisfy this element, the government need not establish that the firearm was operable, so long as it was designed to expel a projectile by the action of an explosive.

In order to prove that the defendant used the firearm, the government must prove beyond a reasonable doubt an active employment of the firearm by the defendant during and in relation to the commission of the crime of violence.  This does not mean that the defendant must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon.  The mere possession of a firearm at or near the site of the crime without active employment as I just described it is not sufficient to constitute a use of the firearm.

In order to prove that the defendant carried the firearm, the government must prove beyond a reasonable doubt that

47

the defendant had the weapon within his control in such a way that it furthered the commission of a crime of violence or was an integral part of the commission of the crime.  The defendant did not necessarily have to hold the firearm physically, that is, have actual possession of it on his person.  It is sufficient to prove that the defendant had dominion and control over the place where the firearm was located, and had the power and intention to exercise control over the firearm in such a way that it furthered the commission of the crime of violence.

To prove that the defendant possessed the firearm in furtherance of the crime, the government must prove that the defendant had possession of the firearm and that such possession was in furtherance of the crime.  To possess a firearm in furtherance of the crime means that the firearm helped forward, advance or promote the commission of the crime.

With respect to the third element of this count, you must find beyond a reasonable doubt that the defendant acted "knowingly" and "intentionally."

With respect to the final element, a "destructive device" is defined as any explosive bomb, grenade, rocket which

has a propellant charge of more than four ounces, missile having an explosive or incendiary charge of more than one-quarter ounce, or similar device.

## Authority

Sand, Form Instructions 35-76, 78, 79, 80, 80.1.

REQUEST NO. 21

Count Nine

Use of a Destructive Device

Count Nine of the Indictment reads as follows:

In or about and between November 2008 and
September 2009, both dates being approximate
and inclusive, within the Eastern District of
New York and elsewhere, the defendant ADIS
MEDUNJANIN, also known as "Muhammad,"
together with others, including Najibullah
Zazi and Zarein Ahmedzay, did knowingly and
intentionally use and carry one or more
firearms during and in relation to one or
more crimes of violence, to wit: the crimes
charged in Counts One, Three, Four, [Six],
and [Seven], and did knowingly and
intentionally possess one or more firearms in
furtherance of such crimes of violence, one
or more of which firearms was discharged, and
one or more of which firearms was a
destructive device.

The statute relevant to Count Nine is Section 924(c)(1)

of Title 18, United States Code, which provides in relevant part:

[A]ny person who, during and in relation to
any crime of violence . . . for which the
person may be prosecuted in a court of the
United States, uses or carries a firearm, or
who, in furtherance of any such crime,
possesses a firearm, shall, [be guilty of a
federal crime].

50

REQUEST NO. 22

Elements of Count Nine
(18 U.S.C. § 924(c))

I have already instructed you on the elements of this statute and the meanings of the terms used in this count.  The only difference between this count and Count Eight is that this count relates to different underlying crimes.

To find the defendant guilty of Count Nine, you must find beyond a reasonable doubt that the defendant used or carried one or more firearms or destructive devices in relation to, or possessed one or more firearms or destructive devices in furtherance of, one of the crimes charged in Counts One, Three, Four, Six and Seven.

As with Count Eight, if you find beyond a reasonable doubt that the defendant violated Section 924(c), you should find him guilty of Count Nine.  You must then also determine whether the government has proved beyond a reasonable doubt whether one or more of the firearms involved in the offense was discharged, and whether one or more of the firearms involved in the offense was a destructive device.

51

REQUEST NO. 23

Aiding and Abetting

The Indictment also charges the defendant with aiding and abetting liability for Counts Three, Seven, Eight, and Nine. The aiding and abetting statute, section 2(a) of Title 18 of the United States Code provides that:

> Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal.

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof. A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find a defendant guilty of the offense charged if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously,

no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

To establish that defendant knowingly associated himself with the crime, the government must establish that the defendant acted knowingly and intentionally.  Thus, with respect to Count Three, the government would have to prove that the defendant knew and intended that the material support was being provided to al-Qaeda, for Count Three; with respect to Count Seven, that the defendant knew and intended to aid an act of terrorism transcending national boundaries; and with respect to Counts Eight and Nine, that the defendant knew and intended that the firearm or destructive device be used, carried, or possessed, and that the defendant at least facilitated or encouraged the use, carrying or possession of that firearm or destructive device in some way.

To establish that the defendant participated in the commission of the crime, the government must prove that defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor.  An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

54

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense.  If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you must find him not guilty.

## Authority

Adapted from Sand, Form Instructions 11-1, 11-2.

REQUEST NO. 24

Pinkerton

With respect to Count Nine, even if you do not find that the government has satisfied its burden of proof with respect to each element of the substantive crime, or that the defendant is guilty as an aider and abettor, there is another method by which you may evaluate the possible guilt of the defendant.

If you find, beyond a reasonable doubt, that the defendant was a member of one or more of the conspiracies charged in Counts One, Four, or Six of the Indictment, then you may also, but you are not required to, find him guilty of Count Nine provided that you find, beyond a reasonable doubt, each of the following elements:

First, that someone else - for example, Najibullah Zazi or Zarein Ahmedzay - committed the crime charged in Count Nine;

Second, that the person or persons you find actually committed the crime charged in Count Nine were members of the conspiracy or conspiracies you found to have existed;

Third, that the crime charged in Count Nine was committed pursuant to the common plan and understanding you found to exist among the conspirators;

Fourth, that the defendant was a member of that conspiracy or those conspiracies at the time the crime charged in Count Nine was committed;

Fifth, that the defendant could have reasonably foreseen that the crime charged in Count Nine might be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crime charged against him, even if he did not personally participate in the acts constituting the crime, and even if he did not have actual knowledge of it.

<u>Authority</u>

Adapted from Sand, Form Instruction 19-13.

REQUEST NO. 25

Testimony of Government Employees

During the trial, you heard testimony from government employees.

Because a witness may be a government employee does not mean that his testimony is entitled to any greater weight by reason of his employment.  By the same token, his testimony is not entitled to less consideration simply because he or she is a government employee.

You should consider the testimony of government employees just as you would consider any other evidence in the case and evaluate their credibility just as you would that of any other witness.  After reviewing all the evidence, you will decide whether to accept the testimony of government employee witnesses, and what weight, if any, that testimony deserves.

Authority

Adapted from charge of Hon. I. Leo Glasser in United States v. Buntin McPherson, 90-CR-896 (ILG).

58

REQUEST NO. 26

Expert Testimony

In this case, you heard the testimony of Evan Kohlmann, an expert in certain terrorist organizations and propaganda, and the usage of related jihadist terminology.  You also heard the testimony of David McCollum and Kirk Yeager, experts in matters related to explosive materials.

An expert simply refers to an individual who is offered as having certain skill, knowledge or proficiency in a certain area.  As experts, they were asked to state their opinions on matters they are presumably knowledgeable about so as to assist you, the jury, in your determination of the facts in the case.

Just because a witness testifies as an expert does not mean that you are obligated to accept the expert's opinion or views.  Quite the contrary.  You are entitled to accept or reject the opinion testimony of an expert depending upon how you assess that witness, the witness's opinions, the reasons the witness may have given for them, and the facts upon which they are based. You may also consider the expert's qualifications and reasons for testifying.  Just as with any other witness, the expert witness is to be evaluated and judged by you and you may accept the testimony in whole or in part or not at all, as you see fit.

59

<u>Authority</u>

Adapted from charge of the Hon. Nina Gershon in <u>United States v. Shin</u>, E.D.N.Y., 07-CR-113 (NG).

REQUEST NO. 27

Cooperating Witnesses Called by the Government

You have heard witnesses who testified that they were involved in planning and carrying out certain crimes with the defendant, or without the defendant.  Those witnesses testified pursuant to a cooperation agreement, which provides that, in exchange for agreeing to cooperate and testify, the witness's cooperation would be brought to the attention of the sentencing judge.

Section 5K1.1 of the United States Sentencing Guidelines provides the framework for federal courts to use to determine the sentences of cooperating witnesses.  Section 5K1.1 provides that the government can make a motion – which can be in the form of a letter – stating that a defendant has provided substantial assistance in the investigation or prosecution of another person.  The witness's sentencing judge may then consider the motion in deciding what sentence to impose.  The judge may – but is not required to – impose a sentence below a minimum sentence that would otherwise be required by law.

Two factors to keep in mind in this regard are: (1) only the government can make such motions, and it cannot be compelled to do so, provided it has acted in good faith; and (2) the sentencing judge has complete discretion as to whether or not

61

to grant the motion.  Thus, regardless of whether or not a 5K1.1 motion is made, the final determination as to the witness's sentence rests with the court and not with the government.

In addition, you heard testimony from a witness who signed an agreement to cooperate with the government of the United Kingdom, and testified in this trial because he was required to do so under that agreement, even though he has already been sentenced in the United Kingdom.

There has been a great deal said about these so-called "cooperating witnesses" in the summations of counsel, and about whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.  For those very reasons, the law allows the use of accomplice testimony.  Indeed, it is the law in federal courts that the testimony of accomplices may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that testimony of cooperating witnesses is of such a nature that it must be

scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of cooperating witnesses.

You should ask yourselves whether these witnesses would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully?

If you believe that a cooperating witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony?

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the testimony of cooperating witnesses.

<u>Authority</u>

Adapted from Sand, Form Instruction 7-5; charge of the Hon. Nicholas Garaufis in <u>United States v. Ronell Wilson</u>, E.D.N.Y. 04-CR-1016 (NGG); charge of the Hon. Frederic Block in <u>United States v. Kenneth McGriff</u>, E.D.N.Y. 04-CR-966 (FB).

<u>REQUEST NO. 28</u>

<u>Interviewed Witnesses</u>

During the course of trial you heard testimony that the attorneys interviewed witnesses when preparing for the trial. You must not draw any unfavorable inference from that fact.  On the contrary, attorneys are obliged to prepare their case as thoroughly as possible and in the discharge of that responsibility properly interview witnesses in preparation for the trial.

<u>Authority</u>

Adapted from charge of Hon. I. Leo Glasser in <u>United States v. Young Taek Lee</u>, E.D.N.Y., 93 CR 1072 (ILG).

65

<u>REQUEST NO. 29</u>

<u>Uncalled Witnesses Equally Available To Both Sides</u>

Both the government and the defense have the same power to (1) subpoena witnesses to testify on their behalf, or (2) depose witnesses located abroad, who would be otherwise unavailable to testify at a trial in the United States, for the purpose of using their recorded deposition testimony at trial.

If a potential witness could have been called to testify at trial, or deposed to testify abroad, by either the government or the defendant, and neither party called the witness, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

<u>Authority</u>

Adapted from Sand, Form Instruction 6-7; <u>United States v. Rosa</u>, 11 F.3d 315, 342 (2d Cir. 1993).

66

REQUEST NO. 30

Failure To Name A Defendant

You may not draw any inference, favorable or unfavorable, towards the government or the defendant on trial from the fact that certain persons were not named as defendants in this Indictment.  You should draw no inference from the fact that any other person is not present at this trial.  Your concern is solely the defendants on trial before you.

That other individuals are not on trial before you is not a matter of concern to you.  You should not speculate as to the reasons these individuals are not on trial before you.  The fact that these individuals are not on trial before you should not control or influence your verdict with reference to the defendants who are on trial.

Authority

Adapted from Sand, Form Instruction 3-4.

67

REQUEST NO. 31

Use of Recordings, Deposition Video, and Transcripts

The government has offered evidence in the form of recordings of conversations involving the defendant, and has been permitted to hand out typed documents which it prepared containing transcripts of what appears on the recordings which have been received as evidence.  Those transcripts were agreed upon by the government and the defense, and were given to you as an aid or guide to assist you in listening to the recordings. However, as to those transcripts of discussions that were in English, the transcripts are not in and of themselves evidence. You alone should make your own interpretation of what appears on the recordings based on what you heard.  If you think you heard something differently than what appeared on the transcript, then what you heard is controlling.

In addition, you saw the videotaped testimony of a witness that was taken by deposition in another country.  This testimony must be evaluated by you in exactly the same was as if that witness had appeared in this courtroom and testified in person from that witness stand.  You may accept or reject the testimony in whole or in part as I have instructed you generally regarding credibility determinations, but you cannot treat that

68

testimony differently solely because of the form in which it was presented to you.

You heard both from the recordings themselves and from witnesses that some portions of the conversations were in foreign languages, including Arabic.  For that reason, it was necessary to obtain translations of those conversations into English.  The transcript of those portions of the conversations embody the testimony of interpreters.  As such, those portions of the transcripts reflecting the foreign language-to-English translation have been admitted into evidence.

Similarly, translations of certain documents that were in foreign languages also embody the testimony of interpreters, and have been admitted into evidence.  To the extent that you accept or reject the testimony of any interpreter, however, you may accept or reject the transcript or translation itself.

<u>Authority</u>

Adapted from Sand, Form Instructions 5-9, 5-10, 5-11; <u>United States v. Ulerio</u>, 859 F.2d 1144, 1145 (2d Cir. 1988); <u>United States v. Vasquez</u>, 605 F.2d 1269, 1272 & n.4 (2d Cir. 1979); charge of the Hon. John Gleeson in <u>United States v. Betim Kaziu</u>, 09-CR-660 (S-1)(JG) (deposition testimony).

69

<u>CONCLUSION</u>

The government respectfully requests that the Court include the foregoing in its instructions to the jury.


Dated:     Brooklyn, New York
           April 23, 2012

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              271 Cadman Plaza East
                              Brooklyn, New York 11201



David Bitkower
James P. Loonam
Berit W. Berger
Assistant United States Attorneys
     (Of Counsel)