UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA,                          :

     -against-                                       :          Cr. 10-019  (S-4) (JG)

                                                     :

ADIS MEDUNJANIN,
     also known as "Muhammad,"                     :

                 Defendant.         :

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF ADIS MEDUNJANIN'S MOTION FOR JUDGMENT OF ACQUITTAL

Robert C. Gottlieb, Esq.
Mitchell Dinnerstein, Esq.
Justin Heinrich, Esq.
Stephanie Carvlin, Esq.
Counsel for Adis Medunjanin
111 Broadway, Suite 701
New York, NY   10006
212-566-7766

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……………………………………………………………...…….….1

**ARGUMENT**

**MR. MEDUNJANIN'S CONVICTION UNDER COUNT EIGHT
MUST BE VACATED AND A JUDGMENT OF ACQUITTAL
MUST BE ENTERED ON THIS COUNT**………………………………………….…..…2

**CONCLUSION**………..…………………………………………………………………………….10

## TABLE OF AUTHORITIES

### Statutes

18 U.S.C. §2……………………………………………………………………...1, 2, n1

18 U.S.C. §924(c)……………………………………………………………….....*passim*

18 U.S.C. §924(c)(1)(A)(i)………………………………………………………....2

18 U.S.C. §924(c)(1)(A)(iii)……………………………………………………….2

18 U.S.C. §924(c)(1)(B)(ii)………………………………………………………..2

18 U.S.C. §956(a)(1)……………………………………………………………1, 2. n1

18 U.S.C. §956(a)(2)……………………………………………………………1, 2. n1

18 U.S.C. §1114………………………………………………………………….6

18 U.S.C. §1117………………………………………………………………….6

18 U.S.C. §2332a(a)(2)…………………………………………………………..1

18 U.S.C. §2332b(a)(1)(A),…………………………………………………...…1

18 U.S.C. §2332b(a)(2), …………………………………………………………2

18 U.S.C. §2332b(b)(1)(A)………………………………………………………2

18 U.S.C. §2332b(b)(1)(B) …………………………………………………...…2

18 U.S.C. §2332b(c)(1)(A) ………………………………………………………2

18 U.S.C. §2332b(c)(1)(C) ………………………………………………………2

18 U.S.C. §2332b(c)(1)(D) ………………………………………………………2

18 U.S.C. §2332b(c)(1)(F) ……………………………………………………….2

18 U.S.C. §2332b(c)(2) ………………………………………………………….2

18 U.S.C. §2332b(e)………………………………………………………………5

18 U.S.C. §2332g(b)………………………………………………………………5

18 U.S.C. §2339B(a)(1) ……………………………………………………………………1

18 U.S.C. §2339B(d)……………………………………………………………………5

18 U.S.C. §2339B(d)(1)(A) …………………………………………………………………1

18 U.S.C. §2339B(d)(1)(C) …………………………………………………………………1

18 U.S.C. §2339B(d)(1)(D) …………………………………………………………………1

18 U.S.C. §2339B(d)(1)(E) …………………………………………………………………1

18 U.S.C. §2339B(d)(1)(F) …………………………………………………………………1

18 U.S.C. §2339B(d)(2) ……………………………………………………………………1

18 U.S.C. §2339D(a) ………………………………………………………………1, 2, n1

18 U.S.C. §2339D(b)(1) ……………………………………………………………1, 2, n1

18 U.S.C. §2339D(b)(3) ……………………………………………………………..1, 2, n1

18 U.S.C. §2339D(b)(5) ……………………………………………………………1, 2, n1

**Federal Rules**

Fed. R. Crim. P. 29(c) ……………………………………………………………………2

**Cases**

E.E.O.C. v. Arabian American Oil Co,
    499 U.S. 244 (1991)………………………………………………………………3

United States v. Al Kassar,
    660 F.3d 108 (2d Cir. 2011)…………………………………………3, n2, 6, 9

United States v. Belfast,
    611 F.3d 783 (10th Cir. 2010)……………………………………………….7

United States v. Bowman,
    260 U.S. 94 (1922)……………………………………………………………....6

United States v. Gatlin,
    216 F.3d 207 (2d Cir. 2000)……………………………………………….3, 4

United States v. Mardirossian,
    818 F.Supp.2d 775 (S.D.N.Y. 2011)……………………………………….8

United States v. Reumayr,
    530 F.Supp.2d 1210 (D. N.M. 2008)……………………………………………………8

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003)………………………………………………………3, 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

UNITED STATES OF AMERICA,       :

        -against-        :     Cr. 10-019  (S-4) (JG)

                 :

ADIS MEDUNJANIN,
        also known as "Muhammad,"     :

               Defendant.    :

-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF ADIS MEDUNJANIN'S POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL**

**PRELIMINARY STATEMENT**

On May 1, 2012, following a trial by jury, Adis Medunjanin was found guilty of nine charges: conspiracy to use weapons of mass destruction in violation of 18 U.S.C. §2332a(a)(2); conspiracy to commit murder in foreign country in violation of 18 U.S.C. §956(a)(1) and §956(a)(2); providing material support to a foreign terrorist organization in violation of 18 U.S.C. §§2339B(a)(1), 2339(B)(d)(1)(A), 2339B(d)(1)(C), 2339B(d)(1)(D), 2339B(d)(1)(E), 2339B(d)(1) (F), 2339B(d)(2) and 18 U.S.C. §2; conspiracy to provide material support to a foreign terrorist organization in violation of 18 U.S.C. §§18 U.S.C. §§2339B(a)(1), 2339(B)(d)(1)(A), 2339B(d)(1)(C), 2339B(d)(1)(D), 2339B(d)(1)(E), 2339B(d)(1) (F), 2339B(d)(2); receiving military-type training from a foreign terrorist organization in violation of 18 U.S.C. §§2339D(a), 2339D(b)(1), 2339D(b)(3), 2339D(b) (5) and 18 U.S.C. §2; conspiracy to commit an act of terrorism

1

transcending national boundaries in violation of 18 U.S.C. §§2332b(a)(1)(A), 2332b(a)(2), 2332(b)(1)(A), 2332b(b)(1)(B), 2332b(c)(1)(A), 2332b(c)(1)(C), 2332b(c)(1)(D), 2332b(c)(1)(F), 2332b(c)(2); attempt to commit an act of terrorism transcending national boundaries in violation of 18 U.S.C. §§18 U.S.C. §§2332b(a)(1)(A), 2332b(a)(2), 2332(b)(1)(A), 2332b(b)(1)(B), 2332b(c)(1)(A), 2332b(c)(1)(C), 2332b(c)(1)(D), 2332b(c)(1)(F), 2332b(c)(2) and 18 U.S.C. §2; and two counts of possession, use, carrying and discharge of a destructive device in violation of 18 U.S.C. §§924(c)(1)(A)(i), 924(c)(1)(A)(iii), 924(c)(1)(B)(ii) and 18 U.S.C. §2. Mr. Medunjanin now submits this Memorandum of Law in support of his Motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) ("Fed. R. Crim. P.").

## ARGUMENT

### MR. MEDUNJANIN'S CONVICTION UNDER COUNT EIGHT MUST BE VACATED AND A JUDGMENT OF ACQUITTAL BE ENTERED

Count Eight of the indictment charged Mr. Medunjanin with using and carrying one or more firearm in relation to specified underlying crimes of violence and possessing one or more firearm that was a destructive device in furtherance of the denominated crimes of violence. The government further alleged that destructive devices and firearms were discharged.[1] However, the government's evidence at trial demonstrated that the conduct comprising this offense occurred solely outside of the United States. Section 924(c) does not by its terms apply to

---

[1] The underlying crimes of violence alleged in support of the §924(c) charge in Count Eight were conspiracy to use commit murder in a foreign country in violation of 18 U.S.C. §§956(a)(1) and 956(a)(2) and receiving military type training from a foreign terrorist organization in violation of 18 U.S.C. §§2339D(a), 2339D(b)(1), 2339D(b)(3), 2339D(b) (5) and 18 U.S.C. §2;

2

conduct that takes place outside the United States. Nor is there any other basis to infer that Congress intended that §924(c) apply extraterritorially. As a result, this Court should enter a judgment of acquittal on this count.

## Standard of Review

To determine whether a federal criminal statute should be applied extraterritorially, a reviewing court must undertake a two-part inquiry. The first question to be answered is whether Congress intended that the reach of the law extend to activity that takes place beyond the geographical boundaries of the United States. In conducting this analysis, a court must assume that Congress does not intend for a statute to apply extraterritorially unless Congress clearly evinces a contrary intent. E.E.O.C. v. Arabian American Oil Co, 499 U.S. 244, 248 (1991), *superseded by statute*; United States v. Gatlin, 216 F.3d 207, 211-12 (2d Cir. 2000).[2] If Congress did intend that a statute apply extraterritorially, the court still must analyze whether applying the statute to conduct that occurs outside the United States would violate due process. United States v. Al Kassar, 660 F.3d 108, 118 (2d Cir. 2011). "In order to apply extraterritorially a federal criminal statute to a defendant consistent with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003)(citation and quotation marks omitted).

---

[2]This presumption does not apply to criminal offenses that "by their nature" suggest extraterritorial effect. Al Kassar, 660 F.3d at 118. As discussed *infra*, §924(c) is not such a statute.

## Congress Did Not Intend That 18 U.S.C. § 924(c) Be Applied To Conduct That Occurred Outside Of The United States

In determining legislative intent, a reviewing court may "consider all available evidence about the meaning of the statute, including the text, structure, and legislative history." Gatlin, 216 F.3d at 212. There is nothing about the structure or language of §924(c) that suggests Congress intended that it apply outside the United States. The statute provides in pertinent part as follows:

> (A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
> (i) be sentenced to a term of imprisonment of not less than 5 years;
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
> (iii)   if the firearm is discharged, be sentenced to a term of imprisonment of not less than ten years.
>
> (B) If the firearm possessed by a person convicted of a violation of this subsection—
> (i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years; or
> (ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.
>
> (C) In the case of a second or subsequent conviction under this subsection, the person shall—
> (i) be sentenced to a term of imprisonment of not less than 25 years; and
> (ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be

sentenced to imprisonment for life.

The statute contains no express provision granting extraterritorial jurisdiction. Of course, Congress knows how to extend a statute's coverage to conduct that takes place outside of the United States when it chooses, as evidenced by the fact that many federal criminal statutes explicitly provide for extraterritorial application. *See e.g.* 18 U.S.C. §2332b(e)("there is extraterritorial federal jurisdiction over any [offense under this statute], including any threat, attempt or conspiracy to commit such offense), 18 U.S.C. §2332g(b)(listing circumstances in which conduct prohibited by the statute "is within the jurisdiction of the United States") and 18 U.S.C. §2339B(d)(listing preconditions for extraterritorial application of the statute).

Additionally, there is nothing in the legislative history of §924(c) from which it can reasonably be inferred that Congress intended to cover conduct occurring outside of the United States. Section 924 was enacted as part of the Gun Control Act of 1968.[3] Congress stated the purpose of the law explicitly:

> The Congress hereby declares that the purpose of this title is to provide support to Federal, State and local law enforcement officials in their fight against crime and violence.

P.L. 90-618, §101. The House Committee responsible for drafting the bill noted the same domestic concern:

> GENERAL STATEMENT
>
> The increasing rate of crime and lawlessness and the growing use of firearms in violent crime clearly attest to a need to

---

[3] Sections 921-928 of Title 18 were originally enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968. The Gun Control Act, which was passed later in 1968, reenacted §§921-928 with minor changes.

strengthen Federal regulation of interstate firearms traffic.

The subject legislation responds to widespread national concern that existing Federal control over the sale and shipment of firearms [across] State lines is grossly inadequate.

Handguns, rifles, and shotguns have been the chosen means to execute three-quarters of a million people *in the United States* since 1900. The use of firearms in violent crimes continues to increase today. Statistics indicate that 50 lives are destroyed by firearms each day. In the 13 months ending in September 1967 guns were involved in more than 6,500 murders, 10,000 suicides, 2,600 accidental deaths, 43,500 aggravated assaults and 50,000 robberies. No civilized society can ignore the malignancy which this senseless slaughter reflects.

H.R.Rep. No. 1577, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410 at 4411-13, 4415 (emphasis added).  It is clear that Congress' concern was with the increase in violence domestically that had resulted from the prevalence of gun possession and use during certain types of crimes.

Relying on the United States Supreme Court's decision in United States v. Bowman, 260 U.S. 94, 98 (1922), the Second Circuit recently emphasized that when "the text of a criminal statute is silent, Congressional intent to apply the statute extraterritorially must be inferred from the nature of the offense." Al Kassar, 660 F.3d at 118. (citation and internal quotation marks omitted). There is nothing inherent in the nature of a §924(c) offense that weighs in favor of concluding that Congress intended the statute to apply extraterritorially. Al Kassar, provides an instructive contrast. There, the defendants were charged under 18 U.S.C. §§1114 and 1117 with conspiring to kill a United States officer or employee. The defendants asserted that their conduct, which occurred entirely in countries other than the United States, could not be prosecuted here. The

Second Circuit rejected that argument, finding the nature of the offense (conspiring to kill, attempting to kill or killing "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties") called for extraterritorial application of the statute. Al Kassar, 660 F.3d at 118. If the statute were interpreted to have a purely domestic reach, Congress's goal – to protect employees of the United States government, including members of the military – would be seriously undermined.

This is not true of 18 U.S.C. §924(c). It is designed to punish – and therefore deter – possession, carrying and use of firearms attendant to violent offenses and drug-trafficking crimes. There is nothing about the nature of this conduct that demands extraterritorial application for the Congressional purpose behind the statute to be realized. Nor is the United States or its officers or employees necessarily the victim of a §924(c) offense.

Admittedly, several courts have rejected this argument.[4] In United States v. Belfast, 611 F.3d 783 (10th Cir. 2010), the Tenth Circuit held that 18 U.S.C. §924(c) should be given extraterritorial effect, under a concept of "ancillary jurisdiction." A statute that is ancillary to a substantive statute has extraterritorial effect if the underlying substantive offense has extraterritorial effect. Under this thinking, §924(c) (the ancillary statute) may be applied extraterritorially if the substantive statute (the crime of violence or drug trafficking offense during and in

---

[4]The Second Circuit has not yet ruled on this issue.

relation to or in furtherance of which the weapon was used, carried or possessed) on which the 924(c) violation is premised may be applied to conduct occurring outside of the United States. *Accord*   United States v. Mardirossian, 818 F.Supp.2d 775 (S.D.N.Y. 2011); United States v. Reumayr, 530 F.Supp.2d 1210, 1219 (D. N.M. 2008).

Respectfully, this Court should not adopt the reasoning of Belfast. The concept of ancillary jurisdiction has no application to §924(c) as a review of the other contexts in which the concept has been applied demonstrates. In United States v. Yousef, 327 F.3d 87-88, the question presented was whether the United States could prosecute the defendants for *conspiracy* to commit a substantive offense that clearly could be prosecuted in the United States. The District Court denied the defendants' motion to dismiss the relevant count of the indictment, and the Second Circuit affirmed. The Circuit reasoned that "[I]f Congress intended United States courts to have jurisdiction over the substantive crime of placing bombs on board the aircraft at issue, it is reasonable to conclude that Congress intended to vest in the United States courts the requisite jurisdiction over an extraterritorial conspiracy to commit that crime." Id. In other words, the controlling issue was Congressional intent.

As detailed above, neither the express language of §924(c) nor the legislative history of the act evinces such an intent. Section 924(c) does not apply to conduct that occurs solely outside the United States. Accordingly, this Court should enter a judgment of acquittal on Count Eight of the indictment.

## Applying 18 U.S.C. §924(c) As Charged In
## Count Eight Would Violate Due Process

Even if this Court concludes that 18 U.S.C. §924(c) does have extraterritorial reach, that determination does not end the inquiry. The question still must be answered whether application of §924(c) to Mr. Medunjanin's conduct would violate due process: Does the criminal conduct have sufficient nexus with the United States to make prosecuting the charge here fair? Al Kassar, 660 F.3d at 118.

Count Eight was based on Mr. Medunjanin's purported use of various firearms and destructive devices during a September 2008 trip to Pakistan. To sustain this charge, the government offered testimony from cooperating witnesses Najibullah Zazi and Zarein Ahmedzay. Messrs. Zazi and Ahmedzay testified that in September of 2008, they and Mr. Medunjanin received weapons training at an al Qaeda compound in South Waziristan, Pakistan. (Trial at 125.) At the training camp, the three men were taught the Arabic and English words for various weapons and parts, including an AK-47 and a PK machine gun. Each man handled the guns. They learned how to disassemble and reassemble the firearms and how to shoot them. (Trial at 132-34.) The training culminated in a trip to hills 20-30 minutes away from the camp. There, Messrs. Zazi, Ahmedzay and Medunjanin fired a pistol, an AK-47, a PK machine gun and a rocket launcher. They each threw a grenade. Mr. Medunjanin fired a bazooka. (Trial at 506.) Soon after receiving this training, Mr. Medunjanin returned to the United States.

As this review of the government's proof with respect to Count Eight demonstrates, the firearms and destructive devices at issue were used, carried, possessed and discharged in Pakistan only. The requisite connection to the United States is lacking in this case. Accordingly, this count of the indictment must be dismissed.

## **CONCLUSION**

For the reasons stated herein and in the accompanying Notice of Motion and Declaration, Count Eight must be dismissed.

Respectfully submitted,

/s/ Stephanie Carvlin (SC9161)
_____
Stephanie Carvlin, Esq.
Robert C. Gottlieb, Esq.
Mitchell Dinnerstein, Esq.
Justin Heinrich, Esq.

cc via ECF:   Assistant United States Attorneys
              David Bitkower
              Berit Berger
              James Loonam