C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
UNITED STATES OF AMERICA,

       - against -

ADIS MEDUNJANIN,

                      Defendant.

-------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

10-cr-0019 (BMC)
19-cv-2371 (BMC)
20-cv-2755 (BMC)

**COGAN**, District Judge.

    Before me is defendant's amended motion for habeas corpus relief under 28 U.S.C. § 2255. Defendant argues that (i) his conviction on two counts of the indictment under 18 U.S.C. § 924(c) should be vacated in light of recent Supreme Court precedent; (ii) his "enhanced" sentence for those two § 924(c) counts should be vacated; (iii) placing the § 924(c) counts before the jury unduly prejudiced his trial on the other counts; and (iv) he was denied effective cross-examination of the government's expert witness because the government failed to disclose classified discovery that would have revealed the expert's bias in favor of the government.

    For the reasons described below, defendant's motion is granted in part and denied in part. Defendant's conviction on Count Nine of the indictment – possessing a destructive device in furtherance of the crimes of violence charged in Counts Two and Five, in violation of 18 U.S.C. § 924(c) – is vacated, but his conviction on the other § 924(c) count, Count Eleven, remains valid. I will enter an amended judgment reflecting the vacatur of Count Nine and changing

defendant's term of imprisonment to 30 years' imprisonment on Count Eleven to run consecutive to a total of 65 years' imprisonment on the underlying counts.

## BACKGROUND

In 2008, defendant and two other individuals traveled to Pakistan with the intent to join the Taliban and kill American soldiers in Afghanistan. They received military training from al-Qaeda leaders who encouraged them to return to the United States to conduct suicide attacks. In 2009, the three men met in New York City and agreed to conduct a coordinated suicide bombing attack on the New York City subway system. These events culminated in defendant's arrest in January 2010 after he drove to the Whitestone Expressway in Queens, New York, and deliberately caused a high-speed collision with another car, attempting to trigger an explosion to kill himself and others.

After a three-week trial, the jury convicted defendant on all counts charged in the superseding indictment: (1) conspiracy to use weapons of mass destruction against persons or property in the United States, in violation of 18 U.S.C. § 2332a(a)(2) (Count One); (2) conspiracy to commit murder abroad, in violation of 18 U.S.C. § 956(a)(1) (Count Two); (3) providing material support to al-Qaeda, in violation of 18 U.S.C. § 2339B (Count Three); (4) conspiring to provide material support to al-Qaeda, in violation of 18 U.S.C. § 2339B (Count Four); (5) receiving military-type training from al-Qaeda, in violation of 18 U.S.C. § 2339D (Count Five); (6) conspiring to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a) (Count Seven); (7) attempting to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a) (Count Eight); (8) possessing a destructive device in furtherance of the crimes of violence charged in Counts Two and Five, in violation of 18 U.S.C. § 924(c) (Count Nine); and (9) possessing a destructive

device in furtherance of the crimes of violence charged in Counts One, Three, Four, Seven and Eight, in violation of 18 U.S.C. § 924(c) (Count Eleven).

On November 26, 2012, Judge Gleeson sentenced defendant to 65 years' imprisonment on Counts One, Two, Seven and Eight; 15 years' imprisonment on Counts Three and Four; 10 years' imprisonment on Count Five; 30 years' imprisonment on Count Nine; and life imprisonment on Count Eleven. The sentences on Counts One, Two, Three, Four, Five, Seven and Eight were imposed to run concurrently. The sentences on the two Section 924(c) counts (Counts Nine and Eleven) were imposed to run consecutively to the other counts and to each other, for a total of life imprisonment plus 95 years.

Defendant appealed his conviction, arguing principally that Judge Dearie (who handled the case prior to Judge Gleeson) erred in denying plaintiff's pretrial motion to suppress his post-arrest statements on the grounds that the questioning by the government violated his rights under Miranda v. Arizona, 384 U.S. 436 (1966), his Sixth Amendment right to counsel and his Fifth Amendment right to due process. The Second Circuit affirmed the judgment. See United States v. Medunjanin, 752 F.3d 576 (2d Cir. 2014).

In 2018, defendant filed a motion to file a successive petition for habeas relief under 28 U.S.C. § 2255 with the Second Circuit. The Second Circuit stayed the motion and defendant thereafter filed his first motion for habeas relief with this Court. The Second Circuit then denied the motion before it as unnecessary, explaining that the proposed § 2255 motion would not be successive because the "district court docket does not reflect the filing of any prior § 2255 motion by Petitioner, and a § 2255 motion filed in that court after the present proceeding was commenced remains pending." The Second Circuit transferred the proceedings to this Court and defendant's § 2255 motions are considered together here.

Because the government conceded in its response that one count of defendant's conviction must be vacated, I scheduled a resentencing, which has been delayed due to the COVID-19 pandemic. Defendant filed a motion to appoint counsel to assist in his resentencing.

## DISCUSSION

**I.   Defendant's challenge to Count Nine and Count Eleven**

Defendant argues that, because the Supreme Court has found the residual clause of 18 U.S.C. § 924(c)(3)(B) to be unconstitutionally vague, his convictions for Count Nine and Count Eleven must be vacated. The government concedes that defendant's conviction for Count Nine should be vacated but argues that the conviction for Count 11 remains valid.

   A.   <u>18 U.S.C. § 924(c)</u>

Section 924(c) of Title 18 imposes a mandatory consecutive term of imprisonment when a defendant uses or carries a firearm or destructive device during, or possesses a firearm or destructive device in furtherance of, a crime of violence or drug trafficking crime. A crime of violence is a federal felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). The first clause is known as the "elements clause" or "force clause," and the second the "residual clause" or "risk-of-force clause."

In <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), the Supreme Court held that § 924(c)'s residual clause is unconstitutionally vague.[1] The <u>Davis</u> decision thus abrogated the Second

---

[1] The Supreme Court had previously held that the similarly worded residual clauses in 18 U.S.C. § 16(b)'s definition of "crime of violence" and 18 U.S.C. § 924(e)(2)(B)'s definition of "violent felony" were unconstitutionally vague. <u>See</u> generally <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204 (2018); <u>Johnson v. United States</u>, 576 U.S. 591 (2015).

4

Circuit's prior holding in United States v. Barrett, 903 F.3d 166 (2d Cir. 2018), vacated 139 S. Ct. 2774 (2019), that applying a conduct-specific approach to § 924(c)'s residual clause avoids constitutional concerns and saves the clause, and implicitly abrogated Barrett's alternative holding that a conspiracy to commit a crime of violence is itself a crime of violence under the residual clause. See generally United States v. Barrett, 937 F.3d 126 (2d Cir. 2019).

By contrast, the "traditional, elements only, categorial approach" in § 924(c)'s elements clause was not at issue in Davis. See Barrett, 937 F.3d at 128. Thus, Davis did not impact the Second Circuit's interpretation of 924(c)'s elements clause, as set out in United States v. Hill, 890 F.3d 51 (2d Cir. 2018).

In Hill, the Second Circuit considered whether Hobbs Act robbery categorically failed to constitute a crime of violence under the elements clause, § 924(c)(3)(A). "Under the categorical approach, courts identify 'the minimum criminal conduct necessary for conviction under a particular statute.'" Hill, 890 F.3d at 55 (citation omitted). In doing so, courts look only to the statutory definitions – *i.e.*, the elements – of the offense, and not to the particular underlying facts. See id. In employing this approach, "there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence." Id. at 56 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).

In a "narrow range of cases," courts may apply the "modified categorical approach" to determine whether a conviction is for a crime of violence, in which the court looks "beyond the statutory elements to the 'charging paper and jury instructions' used in a case." Descamps v. United States, 570 U.S. 254, 261 (2013). The modified approach is not an exception, but merely

5

a tool for implementing the categorical approach when a defendant is convicted of violating a divisible statute. Id. at 263.

To evaluate whether an underlying offense constitutes a crime of violence under § 924(c)'s elements clause, it is necessary to understand the meaning of "physical force" in the statute. In Johnson v. United States, 559 U.S. 133 (2010), the Supreme Court analyzed § 924(e)(1)'s similarly worded elements clause, which states that a "violent felony" has "as an element the use, attempted use, or threatened use of physical force against the person of another." The Court interpreted "physical force" in this context as "*violent* force – *i.e.*, force capable of causing physical pain or injury to another person." Johnson, 559 U.S. at 140. The similar wording of the elements clauses of § 924(e)(2)(B) and § 924(c)(3) informs my conclusion that the "physical force" required for the latter is also violent force capable of causing physical pain or injury to another. See United States v. Tabb, 949 F.3d 81, 84 (2d Cir. 2020) (noting that where statutory clauses contain identical language, "cases interpreting the clause in one statute are highly persuasive in interpreting the other statute"); Hill, 890 F.3d at 58 (assuming, without deciding, that Johnson's definition of physical force applies to § 924(c)'s elements clause); Rizzuto v. United States, No. 16-CV-3557, 2019 WL 3219156, at *2 (E.D.N.Y. July 17, 2019) (applying Johnson's definition to § 924(c)'s elements clause).

B.  Count Nine

Defendant's conviction for Count Nine is premised on his convictions on two underlying predicate crimes: conspiracy to commit murder abroad, in violation of 18 U.S.C. § 956(a)(1) (Count Two); and receiving military-type training from al-Qaeda, in violation of 18 U.S.C. § 2339D (Count Five). The government concedes that these crimes qualified as crimes of violence

only under § 924(c)'s residual clause and that defendant's conviction for Count Nine should be vacated.

        C.      Count Eleven

Defendant's conviction for Count Eleven is premised on his convictions on five underlying predicate crimes: conspiracy to use weapons of mass destruction against persons or property in the United States, in violation of 18 U.S.C. § 2332a(a)(2) (Count One); providing material support to al-Qaeda, in violation of 18 U.S.C. § 2339B (Count Three); conspiring to provide material support to al-Qaeda, in violation of 18 U.S.C. § 2339B (Count Four); conspiring to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a) (Count Seven); and attempting to commit an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a) (Count Eight). The government argues that defendant's petition to vacate Count Eleven should be denied because the underlying offense in Count Eight, attempting to commit an act of terrorism transcending national boundaries, is a predicate crime of violence under § 924(c)'s elements clause.

The statute prohibiting acts of terrorism transcending national boundaries, 18 U.S.C. § 2332b, is divisible because it sets out one or more elements of the offense in the alternative.[2] Accordingly, I apply the modified categorical approach and look beyond the statutory elements to the charges and jury instructions used in this case. See Descamps, 570 U.S. at 261. The indictment charged defendant with attempting to commit an act of terrorism transcending national boundaries by "knowingly and intentionally" attempting to "kill, maim, commit an assault

---

[2] A defendant commits an offense under this statute if he "kills, kidnaps, maims, commits an assault resulting in serious bodily injury, or assaults with a dangerous weapon any person within the United States" or "creates a substantial risk of serious bodily injury to any other person by destroying or damaging any structure, conveyance, or other real or personal property within the United States," among other elements. 18 U.S.C. § 2332b(a).

7

resulting in serious bodily injury and assault with a dangerous weapon one or more persons within the United States, in violation of Sections 120.05(1), 120.05(2) and 125.25(1) of the New York State Penal Law." The trial judge charged the jury that, to find the defendant guilty of Count Eight, it needed to find that the government proved beyond a reasonable doubt that he "attempted to kill, maim, commit an assault resulting in serious bodily injury to or assault with a dangerous weapon one or more persons within the United States," among other elements.

Count Eight constitutes a crime of violence under § 923(c)'s elements clause. Each of the relevant acts – killing, maiming, assault resulting in serious bodily injury, and assault with a dangerous weapon – requires the use, attempted use, or threatened use of physical force, as does attempting to commit any of these acts.[3]

First, murder is a crime of violence under § 923(c)'s elements clause. Count Eight charged that one of the acts constituting an act of terrorism transcending national boundaries was an attempt to kill, in violation of N.Y. Penal Law § 125.25(1). This section provides that a person is guilty of murder in the second degree when "[w]ith the intent to cause the death of another person, he causes the death of such person or of a third person." Murder in any degree is a crime of violence under the elements clause because "murder, no matter the degree, entails a 'use . . . of physical force' sufficient to trigger the elements clause of § 924(c)." United States v. Russell, No. 05-CR-401, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018). This is the case even though a defendant can murder by omission, such as by withholding food to starve someone, because the "use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly." United States v. Sierra, 782 F. App'x 16, 20 (2d Cir. 2019) (quoting

---

[3] I disagree with the government's contention that an attempt to commit a crime of violence is necessarily a crime of violence itself, see generally United States v. Culbert, No. 19-CR-613, 2020 WL 1849692 (E.D.N.Y. Apr. 13, 2020), but that is the case here.

8

Hill, 890 F.3d at 60); see generally United States v. Castleman, 572 U.S. 157 (2014); United States v. Peeples, 879 F.3d 282 (8th Cir. 2018).

Attempted murder is similarly a crime of violence. The Second Circuit has "repeatedly treated it as self-evident that under New York law 'attempted murder is a crime unmistakably involving an attempted use of physical force.'" Sierra, 782 F. App'x at 20 (citing United States v. Praddy, 729 F. App'x 21, 24 (2d Cir. 2018), and United States v. Scott, 681 F. App'x 89, 94-95 (2d Cir. 2017)). Because murder in the second degree requires a single violent action and result, an attempt to murder necessarily also entails the use or attempted use of force. See Peeples, 879 F.3d at 287.

Second, maiming is a crime of violence under § 923(c)'s elements clause. To maim is to cause another a severe and permanent injury. See *Maim*, BLACK'S LAW DICTIONARY (11th ed. 2019). As with murder, maiming cannot be accomplished without the use of physical force. See United States v. Autrey, 263 F. Supp. 3d 582, 590 (E.D. Va. 2017), aff'd, 744 F. App'x 165 (4th Cir. 2018) ("Only lawyers could sincerely question whether 'maiming' is a 'crime of violence.'").

Attempted maiming is similarly a crime of violence. Like murder, maiming has a single, violent action and result encompassed in the crime. Necessarily, then, any person attempting to maim must be directing his energies to take a substantial step towards that violent and injurious end. Thus, it is categorically certain that an attempt to maim involves the use, attempted use, or threatened use of physical force.

Third, assault resulting in serious bodily injury and assault with a deadly weapon are crimes of violence under § 923(c)'s elements clause. Count Eight charged that the acts constituting an act of terrorism transcending national boundaries included attempts to "commit an assault resulting in serious bodily injury" and "assault with a dangerous weapon" in violation of

N.Y. Penal Law §§ 120.05(1) and (2). Under § 120.05(1), a person is guilty of assault in the second degree when "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person." Under § 120.05(2), a person is guilty of assault in the second degree when "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

Assault under N.Y. Penal Law § 120.05(1) is categorically a crime of violence under § 924(c)'s elements clause. The Second Circuit has suggested, and I agree, that intentionally causing "serious physical injury" to another necessarily requires the use of violent physical force. In Villanueva v. United States, 893 F.3d 123 (2d Cir. 2018), the Second Circuit noted that a third-degree assault statute at issue in a prior case, Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003), could not qualify as a 'violent felony' because the offense "required intent to cause only 'physical injury,' not 'serious physical injury.'" Villanueva, 893 F.3d at 130 n.6. By contrast, Villanueva's first-degree assault conviction required an intent to cause "serious physical injury" and "[t]hat latter element [was] necessary to make his offense a 'violent felony.'" Id. Assault under N.Y. Penal Law § 120.05(1) requires intent to cause "serious physical injury" and is thus a crime of violence under § 924(c)'s elements clause.

For the same reason that attempted maiming is a crime of violence, so too is attempted second-degree assault under N.Y. Penal Law § 120.05(1). Any person attempting to cause serious physical injury to another person necessarily has used, attempted to use, or threatened the use of physical force.

Similarly, both assault and attempted assault under N.Y. Penal Law § 120.05(2) are categorically crimes of violence under § 924(c)'s elements clause. In Tabb, 949 F.3d 81, the

10

Second Circuit held that attempted assault in the second degree under § 120.05(2) is a crime of violence under U.S.S.G. § 4B1.2's elements clause, and reiterated its prior holdings that the attempted crime is a violent felony under 18 U.S.C. § 924(e)(2)'s elements clause, see United States v. Walker, 442 F.3d 787 (2d Cir. 2006), and that the substantive crime is a crime of violence under 18 U.S.C. § 16(a)'s elements clause, see Singh v. Barr, 939 F.3d 457 (2d Cir. 2019). See Tabb, 949 F.3d at 84-88. This is so even though the intent in § 120.05(2) is to cause "physical injury" rather than "serious physical injury" because "the deadly weapon or dangerous instrument element makes obvious that the statute requires the use of violent force." Singh, 939 F.3d at 462; see also United States v. Smith, 813 F. App'x 662, 665 (2d Cir. 2020) (affirming § 924(c) conviction predicated on assault with a dangerous weapon in violation of N.Y. Penal Law § 120.05(2)). Further, "[t]o (attempt to) cause physical injury by means of a deadly weapon or dangerous instrument is necessarily to (attempt to) use 'physical force,' on any reasonable interpretation of that term." Walker, 442 F.3d at 788. Thus, assault and attempted assault under N.Y. Penal Law § 120.05(2) are crimes of violence under § 924(c)'s similarly worded elements clause.

Because attempting to commit an act of terrorism transcending national boundaries as charged is categorically a crime of violence, defendant's conviction on Count Eight is a predicate offense for his § 924(c) conviction on Count Eleven.

Count Eleven also charged defendant with aiding and abetting the use of a destructive device, in violation of 18 U.S.C. § 2. The trial judge charged the jury that "if you find that the government has proved that someone else committed the offense and also proved beyond a reasonable doubt that the defendant aided and abetted that other person in the commission of the offense, you may find the defendant guilty." Whether defendant was convicted of using a

destructive device or aiding and abetting the use of a destructive device does not impact the crime of violence analysis under § 924(c) because aiders and abettors are "punishable as a principal." 18 U.S.C. § 2; see Rosemond v. United States, 572 U.S. 65, 71 (2014) ("[T]hose who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime."). Aiding and abetting is not a separate crime, but merely a separate theory of liability. See Sessa v. United States, No. 20-CV-1957, 2020 WL 3451657, at *5 (E.D.N.Y. June 24, 2020). Even if defendant merely aided and abetted another's use of a destructive device, the jury necessarily found that defendant intended to commit an act of terrorism transcending national boundaries, took a substantial step toward the commission of that crime, and that a destructive device was used in the course of the commission of that crime. This satisfies the elements of § 923(c).

Finally, it does not matter here that Count Eleven charged additional predicate offenses as crimes of violence that no longer qualify as such. "Courts in the Second Circuit have consistently held that a § 924(c) conviction may survive even when one of multiple predicates has been invalidated." United States v. White, No. 16-CR-82, 2020 WL 5117973, at *4 (S.D.N.Y. Aug. 31, 2020) (citing United States v. Walker, 789 F. App'x 241, 244-45 (2d Cir. 2019), in which the Second Circuit upheld defendants' § 924(c) convictions based on Hobbs Act robbery, a valid predicate, even though the other predicate offense, Hobbs Act robbery conspiracy, was invalid). When a jury is instructed on alternative theories of guilt and returns a verdict that may rest on a legally invalid theory, it is subject to harmless-error analysis. See Skilling v. United States, 561 U.S. 358, 414 (2010).

Here, defendant was found guilty on every count of the indictment. The five predicate offenses for Count Eleven all related to defendant's efforts to conduct a suicide attack in the

United States. In finding defendant guilty on all these counts, the jury necessarily found that he intended to kill, maim, or assault victims in the United States, took a substantial step toward doing so, and that explosives were the means for accomplishing this goal. Thus, the jury's verdict would not have changed even if Count Eleven had charged only the predicate offense of attempting to commit an act of terrorism transcending national boundaries.

## II. "Enhanced sentence"

In his second motion to vacate under § 2255 – construed as a motion to amend the pending motion, see Whab v. United States, 408 F.3d 116, 119 (2d Cir. 2005) – defendant claims that his sentence violates the Supreme Court's holding in Nelson v. Colorado, 137 S. Ct. 1249 (2017),[4] because only facts arising out of a final conviction may be considered at sentencing. Defendant claims that his "sentence was enhanced due to [the] last [two] counts [of conviction] which have become unconstitutional."

I think defendant is arguing that the consecutive sentences he received for the two § 924(c) counts must be vacated if those convictions are overturned. Defendant is correct that the portion of his sentence attributable to the vacated conviction on Count Nine cannot stand. As I explain below, I will enter an amended judgment rather than conduct a *de novo* resentencing.

## III. Prejudice to other counts

Defendant next argues that his remaining counts of conviction should be vacated because placing Count Nine before the jury unduly prejudiced his trial.[5] This challenge is without merit. There was no evidence presented to the jury for Count Nine that would not otherwise have been

---

[4] Nelson found unconstitutional Colorado's requirement that exonerated defendants use the state's Exoneration Act to seek a refund of costs, fees, and restitution paid. 137 S. Ct. at 1254. Under the Act, the petitioner had to show, by clear and convincing evidence, her actual innocence to obtain the refund. See id. at 1255. The Court held that this practice violated the presumption of innocence. See id. at 1256.

[5] Defendant argues the same with regard to the other challenges in his § 2255 motion. Because those challenges are meritless, they cannot provide a basis for claiming undue prejudice.

presented to support the other counts. The evidence of defendant's use of guns, rockets, grenades, and other weapons while at an al-Qaeda training camp in Pakistan was properly admitted to prove defendant's underlying convictions for conspiracy to commit murder abroad (Count Two), because that was the purpose of the training, and for receiving military-type training from al-Qaeda (Count Five), because the use of these weapons and destructive devices was evidence of the training. Thus, this evidence was relevant and admissible whether or not Count Nine was charged.

## IV. The government's expert witness

Defendant next claims that he was denied effective cross-examination of the government's expert witness, Evan Kohlmann. Defendant argues that the government failed to produce classified discovery about Mr. Kohlmann's working relationship with the government that would negate the suggestion that he was an impartial expert witness.

At trial, the jury heard about Mr. Kohlmann's potential bias at length. On direct examination, the jury learned that the expert had worked for many different government agencies; had served as an FBI consultant for a decade; had been paid hundreds of thousands of dollars for his work for the FBI, Department of Justice, and Department of Defense; had testified for the Department of Justice twenty-two times; and had by then already invoiced $19,000 for his testimony in this case. On cross-examination, the defense questioned Mr. Kohlmann about other cases in which he had testified for the government; the fees he received in those cases; his hourly rate for testimony in defendant's case; a $20,000 payment from the government for a video he produced; and how his work for the government helped him obtain other lucrative private engagements. The defense expressly challenged Mr. Kohlmann as being on the government's side and rooting for the government to win defendant's case.

14

In another case involving the same expert, the Second Circuit pointed to similar testimony to note that "[s]uch evidence demonstrated that Kohlmann was no newly identified fact or expert witness testifying for the first time for the prosecution. Rather, it convincingly showed that he had a long-standing association with the government and a strong pecuniary motive in its favor." United States v. Mustafa, 753 F. App'x 22, 34 (2d Cir. 2018). Further examination on Mr. Kohlmann's bias "would have been only 'marginally relevant' and essentially 'repetitive'" because the jury had already learned that Mr. Kohlmann had worked for the government in other capacities and been paid handsomely for his work. See id.; see also Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (the Confrontation Clause permits wide latitude to reasonably limit cross-examination that is repetitive or only marginally relevant).

The same is true here. The jury was presented with ample evidence of Mr. Kohlmann's connections to and potential bias toward the government. Thus, defendant was not denied an opportunity to effectively cross-examine this witness on his partiality.

In any event, the classified material regarding Mr. Kohlmann was not discoverable. As I determined in another case and find again here, the information at issue is not material to cross-examining Mr. Kohlmann in any way. See United States v. Farekh, No. 15-cr-268 (E.D.N.Y. Sept. 20, 2017) (Trial Transcript at 1084-85).

**V.    *De novo* resentencing is not warranted**

In United States v. Powers, 842 F.3d 177 (2d Cir. 2016), the Second Circuit clarified that "where only part of a conviction is subsequently overturned," the "'default rule' to remedy a so-called 'conviction error'– as distinct from a so-called 'sentencing error'– is *de novo* resentencing." Id. at 179 (citing United States v. Quintieri, 306 F.3d 1217, 1228 & n.6 (2d Cir. 2002)). An exception applies where "the defendant has already received, as his or her sentence

15

on an upheld count of conviction, a mandatory minimum sentence" because in such cases the "district court's amending its judgment of conviction is, by force of law, 'strictly ministerial.'" Id. at 180 (citation omitted). In other words, resentencing is unnecessary in cases where the defendant's aggregate term of incarceration is unchanged.

The default rule requiring resentencing *de novo* does not apply here. The default rule applies where the conviction on one or more charges is overturned on appeal. See Powers, 842 F.3d at 179; United States v. Rigas, 583 F.3d 108, 117 (2d Cir. 2009) ("Quintieri expressly created a 'default rule' that resentencing is required where part of a conviction is reversed on appeal." (citing Quintieri, 306 F.3d at 1228 n.6)); see also United States v. Desnoyers, 708 F.3d 378, 386-87 (2d Cir. 2013) ("the defendant is entitled to *de novo* sentencing when the court of appeals reverses a conviction"); United States v. Mends, 412 F. App'x 370, 375 (2d Cir. 2011) ("This circuit has adopted a 'default rule that resentencing is required where part of a conviction is reversed on appeal.'"). This is not such a case.

I agree with the reasoning in Ayyad v. United States, No. 16-CV-4346, 2020 WL 5018163 (S.D.N.Y. Aug. 24, 2020), that the default rule does not require a *de novo* resentencing in the § 2255 context. As that court explained, "[a] default rule requiring that the district court hold a *de novo* resentencing each and every time a defendant successfully challenges at least one count of a multi-count conviction would be in tension with the narrow scope of Section 2255." Id. at *2. The limited availability of relief under § 2255 "reflects an interest in the finality of a criminal judgment . . . that is not present on a direct appeal," and the plain text of § 2255 vests the Court "with the discretion to determine first the nature of the relief that 'may appear appropriate.'" Id. (quoting 28 U.S.C. § 2255(b) ("the court . . . shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate")). I agree

16

that I have discretion to hold a *de novo* resentencing in this context if appropriate but am not required to do so.

I decline to conduct a *de novo* resentencing here because the resentencing is entirely academic. Defendant was sentenced to 65 years' custody to run concurrently on all underlying crimes, 30 years' custody to run consecutive on the first § 924(c) conviction for Count Nine, and life to run consecutive on the second § 924(c) conviction for Count Eleven, for a total of life plus 95 years. Even after vacating Count Nine, the remaining § 924(c) conviction has a required minimum of 30 years to run consecutive to the underlying counts because the offense involved the use of a destructive device.

Because the conviction and sentence on the underlying counts were not tainted by the § 924(c) count to be vacated here, I will not disturb that 65-years sentence. The remaining § 924(c) count has a required minimum of 30 years to run consecutive to the underlying counts. This results in a new total sentence of 95 years' custody. In practice, there is no difference between 95 years' custody and life plus 95 years' custody. Defendant will not be released from prison during his lifetime under either sentence. The academic nature of the resentencing combined with the special challenges of bringing defendant – currently held at a "supermax" facility and subject to stringent Special Administrative Measures – before this Court, lead me to conclude that a *de novo* resentencing is not warranted in this case.

Accordingly, the Court will enter an amended judgment reflecting the vacatur of Count Nine and changing defendant's term of imprisonment to 30 years' imprisonment on Count Eleven to run consecutive to a total of 65 years' imprisonment on the underlying counts.

VI. **Motion to appoint counsel**

Because I will enter an amended judgment and defendant will not be resentenced *de novo*, I deny his motion to appoint counsel to assist with resentencing as moot.

## CONCLUSION

Defendant's amended motion for habeas relief under 28 U.S.C. § 2255 is granted in part and denied in part. Defendant's motion to appoint counsel to assist with resentencing is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       October 6, 2020